James SIEFKEN, Plaintiff–Appellant,

v.

The VILLAGE OF ARLINGTON HEIGHTS, an Illinois Corporation, Defendant–Appellee.

No. 94–3408.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1995.

Decided Sept. 14, 1995.

---

Dennis R. Favaro, Elizabeth Redding (argued), Kenneth A. Runes, Susan R. Bauer, Thill, Kolodz & Favaro, Palatine, IL, for James Siefken.

Jack M. Siegel (argued), Altheimer & Gray, Chicago, IL, for Village of Arlington Heights.

Clifford W. Horwitz, Larry J. Coven, Horwitz, Horwitz & Associates Chicago, IL, for amicus curiae American Diabetes Association.

Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On April 15, 1993, James Siefken, then a probationary police officer with the Village of Arlington Heights, experienced a diabetic reaction which resulted in disorientation and memory loss. Unfortunately, this occurred while Siefken was on duty; worse yet, he had just entered his squad car. Siefken erratically drove his squad car at high speed through residential areas some forty miles outside his jurisdiction. He stopped only when pulled over by police officers from St. Charles and Batavia. He remembers nothing of his trip. That day, he was put on administrative leave, and a week later the Village fired him. He claims that his firing violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 791, *et*

seq.[1] The district court granted the Village's motion to dismiss for failure to state a claim, and Siefken appealed. A motion to dismiss for failure to state a claim should be granted only if Siefken could prove no set of facts, consistent with his complaint and attachments, upon which the Village could be liable. *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir.1995).

Congress enacted the ADA to "level the playing field" for disabled people. Congress perceived that employers were basing employment decisions on unfounded stereotypes. *See Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 541 (7th Cir. 1995). The ADA states:

> No covered entity shall discriminate against a qualified individual with a disability *because of* the disability of such an individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. (Emphasis added).

42 U.S.C. § 12112. The ADA does not, however, erect an impenetrable barrier around the disabled employee, preventing the employer from taking any employment actions vis-a-vis the employee. The Village hired Siefken knowing that he was a diabetic; apparently, it believed that Siefken could monitor his medical condition sufficiently to allow him to perform the duties of a patrol officer. They fired him only when he proved them wrong. As the Village stated in his termination letter (which Siefken attached to his complaint and is therefore available for our review, *Paulemon v. Tobin*, 30 F.3d 307, 308–09 (2nd Cir.1994); *cf. Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994) (holding that court could review exhibits attached to defendant's motion to dismiss because the plaintiff referenced the documents in the complaint and the documents were central to claim)), it terminated him *because of* his "failure to alertly and accurately keep [himself] functional and monitor [his] disease."

Siefken does not disagree; he merely believes that he can bootstrap his disease into the line of causation. He argues that but for his diabetes, the incident would not have occurred. But we have never held that mere "but for" causation is sufficient under the ADA, *see Despears v. Milwaukee County*, 63 F.3d 635, 636 (7th Cir.1995); *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 933–34 (7th Cir.1995), and the more immediate cause of the incident leading to his termination was his failure to monitor his condition. He had been diagnosed with diabetes in 1987, six years prior to the incident. As the *amicus curiae*, the American Diabetes Association, argues, with current technology and proper monitoring, most diabetics can reduce the chances of a severe hypoglycemic reaction to virtually nil. Siefken did not do so and cannot now claim that the Village must pay for his failure.[2]

Our decision is bolstered by a colloquy at oral argument. Under the ADA, an employer must make reasonable accommodations to enable a disabled employee to perform his job duties. When asked what accommodation Siefken would request,[3] his counsel replied, "A second chance." But this is not an accommodation, as envisioned in the ADA. As we recently stated, "It is plain enough what 'accommodation' means. The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work." *Vande Zande*, 44 F.3d at 543. Siefken is not asking for an accommodation; he is not asking the Village to change anything. He is asking for another chance to allow *him* to change his moni-

---

**1.** As Siefken's counsel admitted at oral argument, as they pertain to this case, the ADA and the Rehabilitation Act have the same standards, and, for convenience, we will refer to the ADA.

**2.** Siefken alleges that he was "never given adequate instructions regarding the monitor[ing] and control of his diabetes" by his physician. Taking this allegation as true, as we must on a motion to dismiss, does not affect our decision. The Village should not be required to pay for Siefken's physician's mistakes.

**3.** We note that Siefken did not ask for an accommodation for his diabetes, before or after the incident.

toring technique. But the ADA does not require this.

■ The Fifth Circuit has held, as a matter of law, that diabetics are not "otherwise qualified" under the ADA to perform certain jobs requiring driving. *See Chandler v. City of Dallas,* 2 F.3d 1385, 1395 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *cf.* Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391.41(b)(3) ("A person is physically qualified to drive a motor vehicle if that person has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.").[4] And the Third Circuit sustained an FBI regulation prohibiting diabetics from being employed as special agents. *See Davis v. Meese,* 865 F.2d 592 (3rd Cir.1989), *aff'g* 692 F.Supp. 505 (E.D.Pa. 1988). We express no opinion on these issues. We only hold that when an employee knows that he is afflicted with a disability, needs no accommodation from his employer, and fails to meet "the employer's legitimate job expectations," *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995), due to his failure to control a controllable disability, he cannot state a cause of action under the ADA. The judgment of the district court is AFFIRMED.

---

4. Other courts have similarly held that disabled persons that present a significant potential for harm to others in the workplace cannot state a cause of action under the ADA and the Rehabilitation Act. *See, e.g., Doe v. University of Md. Medical Sys. Corp.,* 50 F.3d 1261, 1266 (4th Cir. 1995); *Bradley v. University of Tex. M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 924 (5th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994); *Kohl by Kohl v. Woodhaven Learning Center,* 865 F.2d 930, 940–41 (8th Cir.), *cert. denied,* 493 U.S. 892, 110 S.Ct. 239, 107 L.Ed.2d 189 (1989); *see also School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287–88, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987) (prescribing test to determine whether person with infectious disease is otherwise qualified).