**Jack AMARIGLIO, Plaintiff,**

**v.**

**·NATIONAL RAILROAD PASSENGER CORPORATION, et al., Defendants.**

**Civil Action No. 94–1049 (JHG).**

United States District Court, District of Columbia.

Sept. 20, 1996.

Jack Amariglio, Cary, NC, pro se.

Jonathan I. Saperstein, National Railroad Passenger Corporation, Office of General Counsel, Washington, DC, Jeffrey Hunter Moon, U.S. Catholic Conference, Washington, DC, for Amtrak.

Jeffrey Hunter Moon, U.S. Catholic Conference, Washington, DC, for Dr. R.B. McLean, Individually and in his capacity as Medical Director for Amtrak, L.D. Miller, Individually and in his capacity as Director of Labor Relations for Amtrak, G.F. Mauck, Individually and in his capacity as General Supervisor for Amtrak, Miami Crew Base.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending is the defendants' motion for summary judgment. For the reasons stated below, the motion will be granted.

### Background

The following material facts are not genuinely disputed. In July 1987, Plaintiff Jack Amariglio was hired by AMTRAK to work as a train attendant aboard coaches and sleeping cars. Amariglio's general responsibilities involved providing assistance to passengers to ensure they had a safe and comfortable trip aboard AMTRAK trains. Amariglio performed a broad range of duties, including loading supplies, ensuring the proper operation of lights, heating and air conditioning units, ensuring that the restrooms remain cleaned and stocked, changing the bed linens, assisting while passengers embarked and disembarked from the train, and securing the train car doors after the passengers had loaded. On long-distance trips, like all train attendants, he would be on duty for twenty hours a day.

When first hired, Amariglio was assigned to work out of the On–Board Service ("OBS") crew base in Los Angeles, California. Be-

cause his wife, a non-AMTRAK employee, was transferred to the East coast, Amariglio sought and obtained a transfer from AMTRAK. On May 2, 1988, he was assigned to the OBS crew base in Miami. His normal assignments were as a train attendant on trips between Miami and New York. On July 11, 1988, Amariglio was charged with a violation of AMTRAK's rules. After a hearing, he was terminated from employment. In 1989, however, AMTRAK modified the discipline, changing Amariglio's termination to a suspension.

Amariglio's supervisor, General Manager Gary Mauck contacted Amariglio and directed him to report to Miami for a physical examination. In May of 1990, Amariglio advised Mauck that his poor health and financial circumstances prevented him from traveling to Miami. Amariglio provided a letter from his treating physician, Dr. Guillermo Arana, which stated:

> "Jack Amariglio has been seen in my office and is now under treatment to control his diabetes. It is my opinion that he should not take any long trips, as he needs to be in the area to be monitored. If you have any questions, please feel free to contact my office."

Letter of G.F. Arana, M.D. (May 20, 1990), attached to Motion for Summary Judgment, at Exhibit A, Declaration of Robert B. McLean, M.D. ("McLean Decl."), at attachment 1.

AMTRAK later arranged for Amariglio to be examined by another physician at AMTRAK expense. This physician, Dr. Sidney Martin, confirmed Dr. Arana's diagnosis of diabetes, stating that the blood work indicated "somewhat less than adequate control of diabetes." Dr. Martin wrote:

> I do not think I would be comfortable with advising him to return to his prior duties as described to me. I believe more regular hours of employment with an ability to adhere to a regular and prescribed diet would allow gainful employment if such a position was available.

Diagnostic Statement of Dr. Sidney Martin (July 9, 1990), attached to Motion for Summary Judgment, at Exhibit A, McLean Decl., at attachment 2.

AMTRAK allows diabetic employees to work as train attendants aboard AMTRAK trains as long as their diabetes is under control. McLean Decl., at ¶ 4. However, based upon the reports from these two doctors, AMTRAK's medical director determined that Amariglio's diabetes was not under control and, consequently, that he was not medically qualified to work as a train attendant. *Id.* at ¶¶ 5–7. On August 16, 1990, Mauck advised Amariglio that he was medically disqualified.

In March of 1993, Plaintiff Amariglio sought to return to work. By letter of March 5, 1993, Amariglio stated that his "physician Dr. G. Arana, has advised [him] that [he] can return to work regular and normal hours" and he requested a transfer to an OBS in North Carolina or Washington, or, alternatively, to be assigned to clerical work. AMTRAK responded promptly by letter of March 10, 1993, advising Amariglio that there were no crew bases in North Carolina and of the proper procedures to seek transfers to the OBS in Washington or to another craft or class. *See* Letter from L.D. Miller, Director Labor Relations to Mr. Jack Amariglio (March 10, 1993), attached to Plaintiff's Objection to Defendants' Motion for Summary Judgment, at Ex. 3.

Where an AMTRAK employee has been medically disqualified but seeks to have the disqualification lifted, AMTRAK requires the employee to submit documentation from his or her treating physician demonstrating that the employee's medical condition has improved. McLean Decl., at ¶ 3. If AMTRAK's medical director determines that the documentation indicates an improvement, AMTRAK arranges for a specialist to examine the employee. *Id.* If the specialist's examination confirms the improvement, AMTRAK lifts the disqualification and directs the employee to report for a physical examination. *Id.* AMTRAK's medical director requires the treating physician to provide documentation because the treating physician is presumed to be the most familiar with the employee's condition. *Id.* at ¶ 4.

On March 23, 1993, Plaintiff Amariglio submitted an undated letter from Dr. Arana

and the 1990 report from Dr. Martin upon which AMTRAK's medical director had previously relied in disqualifying him. Dr. Arana's letter stated that, among other things, Amariglio suffered from diabetes and that regular follow-up through blood tests and urinalysis was required. *See* Dr. Arana letter directed to "To Whom it May Concern,", enclosed with Plaintiff's Letter of March 23, 1993, attached to McLean Decl., at attachment 1. Since neither the undated Dr. Arana letter nor the 1990 report by Dr. Martin indicated that Plaintiff's medical condition had changed, AMTRAK's medical director advised Plaintiff's supervisor, Mauck, that Amariglio remained medically unqualified and that no return-to-work physical exam was justified. *See* Memorandum to Gary Mauck of March 29, 1993, attached to McLean Decl., at attachment 4; *see also* McLean Decl., at ¶ 8.

The medical director also attempted to contact Dr. Arana independently, sending him letters on May 20, 1993 and October 13, 1993, requesting confirmation of any improvement in Amariglio's condition. *See* McLean Decl., attachment 5 & 7; *id.* at ¶¶ 9 & 11. However, Dr. Arana never provided the documentation that AMTRAK requested. The medical director also wrote to Plaintiff on September 16, 1993, advising him that he had not heard from Dr. Arana. The medical director stated: "Should you be under the care of a new physician, please submit a detailed report from him for my review." *See id.* at attachment 6.

By letter of March 29, 1994, AMTRAK once again sought medical documentation from Plaintiff. *Id.* at attachment 8. However, as before, no documentation was provided even though Amariglio had been seen by a new doctor since 1993 for diabetes and hypertension. *See* Plaintiff's Deposition, at 105 (Sept. 18, 1995), attached to Defendants' Reply, at Exhibit H.[1]

On June 2, 1993, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") alleging a violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (1994). In his administrative complaint, Amariglio alleged discrimination due to disability, claiming that he was denied an opportunity for reinstatement to his former position as a train attendant due to AMTRAK's policy to require fitness for duty medical examinations. *Id.* On March 17, 1995, following an investigation, the EEOC dismissed Amariglio's complaint stating:

> Examination of the evidence indicates that the Charging Party was not eligible for reinstatement to his position as a Train Attendant because he failed to submit the required medical information form, indicating that he was qualified to assume the duties of the position.

EEOC Letter of Determination, attached to Motion for Summary Judgment, Exhibit E, at Deposition Exhibit JJ.

Plaintiff filed the instant *pro se* complaint on May 12, 1994, alleging conspiracy, embezzlement and obstruction of justice against AMTRAK and three individual defendants: AMTRAK's medical director and Director of Labor Relations, and his supervisor, Mauck ("the individual defendants"). Claiming that he was "singled out" due to his reports that the trains on his route were unsafe, Amariglio contends that he suffered "constant abuse" and was denied reinstatement after termination even though Dr. Martin recommended "more regular hours of employment with an ability to adhere to a regular and prescribed diet [to] allow gainful employment."

On July 12, 1995, the Court granted Plaintiff leave to amend his complaint to add the ADA violation. In his Amended Complaint, Amariglio contends that AMTRAK violated the ADA by requiring him to provide medical documentation indicating that his condition had improved and by failing to provide him with a return-to-work medical examination. Construing the *pro se* Amended Complaint liberally, as the Court must, Amariglio claims that AMTRAK failed to reasonably accommodate him under the ADA by "provid[ing] him with regular and normal hours with a

---

**1.** In connection with this litigation, Plaintiff has refused to provide AMTRAK with a medical waiver to obtain documents from Dr. Musselman regarding his medical condition. *See* Plaintiff's Deposition, *supra,* at 266.

transfer to North Carolina or Washington with some financial help to be paid [out] of [his] future earnings for the first 6 months." Affidavit, attached to Amended Complaint. Also attached to his Amended Complaint was a letter from Dr. Arana, which stated, in relevant part:

> On May 20, 1990, I expressed an opinion that Mr. Amariglio should not take any long trips, as he needed to be in the area to be monitored. I did not restrict Mr. Amariglio from work.
>
> I have not treated Mr. Amariglio since his last visit on 1/3/92, therefore I am unable to express any opinion on his current medical condition.

Letter of Dr. Arana addressed to "To Whom it May Concern," (Apr. 19, 1994), attached to Amended Complaint.

In response to the defendants' motion for summary judgment, Amariglio stated that he was unable to oppose it properly, because discovery had not been completed when he filed his memorandum in opposition. Coincident with his memorandum in opposition, he filed a motion to compel the production of documents. Shortly thereafter, Magistrate Judge Kay granted the motion to compel in part and denied it in part, ordering the defendants to review their files for Amariglio's medical documents and, if any were located, to produce them. Magistrate Judge Kay also denied the plaintiff's request for sanctions.

Because Plaintiff Amariglio filed his opposition to the motion for summary judgment without the benefit of documents, if any, that may have been produced pursuant to Magistrate Judge Kay's order, the motion for summary judgment was held in abeyance and the plaintiff was afforded an opportunity to consider those documents in supplementing his opposition. Amariglio was also provided notice under *Neal v. Kelly,* 963 F.2d 453 (D.C.Cir.1992), a copy of which was attached to the Court's Order of January 16, 1996 along with a copy of Fed.R.Civ.P. 56. Plaintiff Amariglio then filed his Statement in Objection to Summary Judgment and Notice of Absence (sic), and subsequently, AMTRAK filed its reply. The defendants' motion for summary judgment is now ripe for review.

**Discussion**

Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see Fritz v. Mascotech Automotive Systems Group, Inc.,* 914 F.Supp. 1481, 1487 (E.D.Mich.1996) (ADA case). Unless the nonmovant brings forth sufficient evidence to demonstrate the existence of genuine issues for trial, summary judgment is appropriate. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2511; *see, e.g., Bergeron v. Northwest Publications,* 1996 WL 210789, *5 (D.Minn., Jan. 12, 1996) (ADA case); *Ericson v. Magis Steel Corp.,* 1994 WL 775442, *2 (W.D.Mich., Nov. 3, 1992) (same). Because there are no genuine issues as to any material facts, summary judgment is appropriate here.

■ The ADA prohibits discrimination by an employer against a qualified individual with a disability who with or without reasonable accommodation can perform the essential functions of the position that the person desires to hold. 42 U.S.C. § 12112(a). As a threshold matter, the Court assumes, as do the defendants, that Amariglio's diabetic condition qualifies as a disability under the

ADA. *See Bergeron*, 1996 WL 210789, at *1; *Coghlan v. H.J. Heinz*, 851 F.Supp. 815, 818 (N.D.Tex.1994). Also, as a preliminary matter, the individual defendants will be dismissed from the suit, because the ADA, like Title VII and the ADEA, does not provide for liability against individuals. The ADA prohibits employers, defined as "a person engaged in an industry affecting interstate commerce who has 15 or more employees ... any agent of such person," 42 U.S.C. § 12111(5)(A), from discriminating due to a person's disability. Identical language has been construed to impose liability only upon the employer, not upon individual agents of the employer in their personal capacity. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.), *cert. denied sub nom.*, — U.S. —, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995) (Title VII); *E.E.O.C. v. AIC Security Investigations*, 55 F.3d 1276, 1279–81 (7th Cir.1995) (ADEA). It would be odd indeed to excuse employers with fourteen employees from ADA liability while holding individuals personally liable, and there is no evidence that this is what Congress intended. The ADA does not impose personal liability, and the defendants sued in their individual capacities will be dismissed.

For a disabled person to be "otherwise qualified" under the ADA, that person must be able to perform the essential functions of the position he or she seeks. 42 U.S.C. § 12111(8); *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir.1995); *see also School Bd. of Nassau County*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1132 n. 17, 94 L.Ed.2d 307 (1987). If the person cannot perform these essential functions, the employer must provide reasonable accommodation unless the employer demonstrates that it would impose an undue hardship on its operation. 42 U.S.C. § 12112(b)(5)(A); *Myers*, 50 F.3d at 282. Under the ADA, reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Failure to provide reasonable accommodation violates the ADA, *id.* § 12112(b)(5)(A), but defenses may be available if the application of qualification standards is job-related, consistent with business necessity or the person could not perform the job even with reasonable accommodation. *Id.* § 12113(a). "[Q]ualification standards may include a requirement that an individual shall not pose a direct threat to health or safety of other individuals in the workplace." *Id.* § 12113(b). A direct threat "means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Id.* § 12111(3).

In determining whether an employee is a qualified individual with a disability within the meaning of the ADA, a court compares the essential functions of the job with the employee's capabilities and medical condition to determine whether the employee can perform those functions. *Johnson v. City of Port Arthur*, 892 F.Supp. 835, 842 (E.D.Tex.1995). Essential functions are the central position requirements, bearing more than a marginal relationship to the job. *See* 29 C.F.R. § 1630.2(n); *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir.1993). The essential functions of AMTRAK train attendants are passenger safety-related and include opening car doors to permit loading and unloading of passengers, assisting passengers as they embark and disembark trains, and securing the car doors after the passengers have loaded. *See* Mauck Decl. at ¶ 5 & attachment 2. The hours are long and stressful, and travel for extended periods is required. Because a person whose diabetes is uncontrolled is subject to disorientation, blurred vision and severe illness that may result in a lapse into coma, *see* Mark L. Bayler, Note, *Dulling a Needle: Analyzing Federal Employment Restrictions on People With Insulin–Dependent Diabetes*, 67 Ind. L.J. 1067, 1069–70 (1992), such a person, like Plaintiff Amariglio, is simply not "otherwise qualified" to perform the essential functions of an AMTRAK train attendant. *See, e.g., Siefken v. Village of Arlington Heights*, 65 F.3d 664, 667 (7th Cir.1995); *Daugherty v. City of El Paso*, 56 F.3d 695, 697 (5th Cir. 1995), *cert. denied*, — U.S. —, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996).

Persons with diabetes have been lawfully excluded from occupations in the transportation industries because of the potential impact upon safety, *e.g., Myers*, 50 F.3d at 282;

*Chandler v. City of Dallas,* 2 F.3d 1385, 1395 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994), as well as in law enforcement, *e.g., Siefken,* 65 F.3d at 667, and even in sanitation. *E.g., Serrapica v. City of New York,* 708 F.Supp. 64, 73 (S.D.N.Y.), *aff'd,* 888 F.2d 126 (2d Cir.1989). AMTRAK, however, bars a person with diabetes only when that person's diabetes is not under control, because a train attendant with uncontrolled diabetes cannot perform the essential functions of the position without creating a substantial harm to the passengers. *See* 29 C.F.R. § 1630.2(r).

The undisputed facts make clear that AMTRAK's conclusion that Amariglio's diabetes was not under control entirely reasonable, particularly in the face of Plaintiff's failure to cooperate by providing medical information from his doctor. *See Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1134–36 (7th Cir.1996). In 1990, Amariglio advised AMTRAK that he suffered from diabetes. *See* Plaintiff's Letter of May 21, 1990, attached to Motion for Summary Judgment, at Exhibit E, Deposition Exhibit Q. At that time, Amariglio was under Dr. Arana's care, who reported that Amariglio was "under treatment to control his diabetes." Dr. Arana's Letter of May 20, 1990. Plaintiff's doctor opined that Amariglio "should not take any long trips, as he needs to be in the area to be monitored." *Id.* Consistent with the ADA, AMTRAK then arranged for an examination of Plaintiff at AMTRAK's expense. *See* 29 C.F.R. § 1630.14(c). This exam, performed less than two months later by Dr. Martin, confirmed Dr. Arana's diagnosis. Based upon this medical information, AMTRAK reasonably concluded that Plaintiff's diabetes was uncontrolled.

In 1993, Amariglio requested that he be returned to work, but he presented no new medical information regarding his condition. Despite AMTRAK's repeated efforts to obtain information from both Plaintiff and Dr. Arana, who AMTRAK reasonably believed was Plaintiff's doctor, none was forthcoming. The undisputed facts in the record indicate that Amariglio was not responsive to AMTRAK's requests for medical information. With no new information indicating that Amariglio's condition had changed, AMTRAK reasonably concluded that he remained unqualified.

■ Although Plaintiff Amariglio did not produce any medical information showing that he was able to perform the essential functions of the job of train attendant, AMTRAK is nevertheless required under the ADA to provide reasonable accommodation unless it would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A); *Myers,* 50 F.3d at 282. As accommodation, Amariglio requested "provid[ing] him with regular and normal hours with a transfer to North Carolina or Washington with some financial help." Affidavit, attached to Amended Complaint. While it is not clear how AMTRAK could determine which accommodations were justified absent updated medical information from Plaintiff, *see Beck,* 75 F.3d at 1134–36; *Ferry v. Roosevelt Bank,* 883 F.Supp. 435, 441 (E.D.Mo.1995), it did offer Amariglio alternatives. Before reviewing those alternatives, it is important to note what the ADA does not require. Although employers cannot discriminate due to a person's disability, the ADA does not require employers to provide assistance unrelated to such disability, like financial help, if they do not provide the same benefits for non-disabled persons. The ADA also does not require AMTRAK to open an OBS Base in North Carolina to accommodate one employee, *see, e.g., Daughtery,* 56 F.3d at 700, nor must AMTRAK eliminate essential job functions to accommodate Amariglio's desire to return to duty as a train attendant. *See Benson v. Northwest Airlines,* 62 F.3d 1108, 1114 (8th Cir.1995); *Champ v. Baltimore County,* 884 F.Supp. 991, 999 (D.Md.1995), *aff'd,* 91 F.3d 129 (4th Cir.1996). However, reasonable accommodation is required, and, within 5 days of Amariglio's request, AMTRAK advised him of the procedures by which to apply for a transfer to Washington or reassignment to a clerical position involving regular hours. Amariglio failed to apply for either. He cannot now complain that AMTRAK failed to provide reasonable accommodation. *See Daughtery,* 56 F.3d at 698–700.

■ Amariglio's remaining claims are equally without merit. In his conspiracy al-

legation, the defendants point out that Amariglio has not alleged an underlying agreement or a tort that would form the basis for his claim. This, they contend, renders his claim defective as a matter of law. However, the Court construes *pro se* complaints broadly, and a failure by a non-lawyer to plead specific elements will not cause his conspiracy allegation to fail under the circumstances of this case. However, Amariglio's claim fails for a different reason: he cannot defeat a motion for summary judgment through mere conclusory statements as to an alleged conspiracy. "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. Here, Amariglio has provided none. The conspiracy allegation will be dismissed.

■ The embezzlement, obstruction of justice, and wage and hour claims fare no better. The embezzlement and obstruction claims are not recognized as civil actions. Even construing the embezzlement allegation generously as the tort of unlawful conversion, it would be time barred because it stemmed from alleged actions that occurred prior to 1990. *See* D.C.Code § 12–301(8) (three year statute of limitations). Nor has Amariglio met his burden to produce sufficient evidence to support these allegations and withstand summary judgment. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. Finally, the alleged wage and hour violation claims will be dismissed, because they require interpretation of a collective bargaining agreement and, as such, are preempted by the National Railway Labor Act, 45 U.S.C. § 151, *et seq.* (1994). *See Hawaiian Airlines, Inc., v. Norris*, 512 U.S. 246, —— — ——, 114 S.Ct. 2239, 2247–51, 129 L.Ed.2d 203 (1994); *Pennsylvania Federation of the Brotherhood of Maintenance of Way Employees, et al., v. National Railroad Passenger Corp.*, 989 F.2d 112, 115 (3d Cir.), *cert. denied*, 510 U.S. 824, 114 S.Ct. 85, 126 L.Ed.2d 53 (1993). Moreover, Amariglio has offered no evidence of administrative exhaustion. *See Morales v. Southern Pac. Transp. Co.*, 894 F.2d 743, 745 (5th Cir.1990).

## Conclusion

Accordingly, it is

**ORDERED** that the claims against the individual defendants are dismissed; and it is

**FURTHER ORDERED** that the defendants'. motion for summary judgment is granted. Judgment shall be entered on a separate Judgment Order in accordance with Fed.R.Civ.P. 58.

IT IS SO ORDERED.