# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1148

_____

| | | |
|---|---|---|
| Ray W. Burroughs, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| City of Springfield, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 21, 1998
Filed: December 28, 1998

_____

Before LOKEN, LAY, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Ray Burroughs, a former police recruit, brought this disability discrimination suit against his former employer, the City of Springfield. He now appeals the district court's[1] grant of summary judgment to the City, arguing that material questions of fact exist concerning whether the City discriminated against him "because of" his disability

_____

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

within the meaning of the Americans with Disabilities Act (ADA). <u>See</u> 42 U.S.C. § 12112(a). We affirm.

I.

The material facts of this case are uncontested, and the district court stated them largely as follows. Ray Burroughs was diagnosed with diabetes in 1990. He was hired as a police recruit for the City of Springfield in 1995, after notifying the City of his diabetic condition and assuring the City that his condition was under control. Burroughs underwent a preemployment physical examination, and the doctor reported that Burroughs was able to work with no limitations. While serving as a police recruit, Burroughs suffered two diabetic hypoglycemic episodes,[2] causing him to become disoriented and dysfunctional while on duty, and necessitating emergency medical care. Following these episodes, the City placed Burroughs on internal duty and required another medical evaluation. On January 11, 1996, the evaluating physician, Dr. Larry E. Koppers, reviewed Burroughs' condition and the records of his recent diabetic episodes. Dr. Koppers concluded it was inappropriate for Burroughs to maintain a position requiring him to carry a gun, because he "could conceivably be dangerous to the public" during an on-duty diabetic episode. (Appellant's App. at 120.) Noting that it is possible for Burroughs to learn to control the episodes by the careful timing of meals and activities, Dr. Koppers suggested that the case be reviewed again after a period of time.

---

[2]"Hypoglycemia is an abnormally low concentration of glucose in the blood which may lead to tremulousness, cold sweat, headache, hypothermia, irritability, confusion, hallucinations, bizarre behavior, and ultimately convulsions and coma." <u>Wood v. Omaha Sch. Dist.</u>, 25 F.3d 667, 668 n.3 (8th Cir. 1994) (citing Dorland's Illustrated Medical Dictionary 804 (27th ed. 1988)).

The City then removed Burroughs from active duty and sent him a letter on February 2, 1996, effectively asking him to take a voluntary demotion or to resign. The reason for this action was outlined as follows:

> Because of the situations that happened on October 18, 1995, and December 4, 1995, the City has a responsibility to assess your physical condition for the position of Police Officer. To assist the City in making a determination, with your consent, we enlisted the aid of Dr. Larry E. Koppers, MD. . . . Dr. Koppers' medical evaluation determined that it would be inappropriate to have you maintain a position of carrying a weapon and that you could conceivably be dangerous to the Public, until such time that you are able to function without significant hypoglycemic episodes.

(Id. at 86.) The City proposed a plan for his possible continued employment in a demoted capacity, but Burroughs chose to resign.

Burroughs brought this ADA suit, claiming that the City discriminated against him on the basis of his disability. The district court granted summary judgment in favor of the City, concluding that Burroughs failed to state a claim of disability discrimination under the ADA because he was not terminated "because of" his disability, but rather because he failed to control his controllable disease. Burroughs appeals.

## II.

We review the district court's grant of summary judgment de novo, using the same standards as the district court. Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021 (8th Cir. 1998). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).

3

The ADA prohibits an employer who is a "covered entity" from discriminating "against a qualified individual with a disability because of the disability of such an individual." 42 U.S.C. § 12112(a). In essence, to state a claim under the statute, the plaintiff must demonstrate that he has a disability as defined in the ADA; that he is qualified to perform the essential functions of the job at issue, either with or without reasonable accommodation; and that "because of" his disability, he suffered an adverse employment action. Gutridge v. Clure, 153 F.3d 898, 900 (8th Cir. 1998); see also Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir.1995); Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir.1995). In this case, the parties do not dispute that the City is a "covered entity," that Burroughs has a "disability" as defined in the ADA, or that Burroughs was "a qualified individual" under the ADA. 42 U.S.C. § 12112(a). But see Wood, 25 F.3d at 669 (affirming district court's finding that insulin-using diabetics were not qualified to drive school buses). Because these issues are not disputed, we will not discuss them. Instead, the dispute here centers on whether the City took the adverse employment action "because of" Burroughs' disability. See id.

The district court concluded that Burroughs failed to demonstrate that the City's adverse employment action was taken because of Burroughs' disability, and therefore, he failed to state a claim under the ADA. For the reasons that follow, we agree.

Our circuit has not yet addressed the precise question raised in this case. We take guidance, however, from the Seventh Circuit, which has addressed a similar factual scenario. See Siefken v. Village of Arlington Heights, 65 F.3d 664, 665-66 (7th Cir. 1995). The Village of Arlington Heights had hired Siefken as a probationary police officer, knowing he was a diabetic but believing he "could monitor his medical condition sufficiently to allow him to perform the duties of a patrol officer." Id. at 666. Siefken failed to monitor his condition properly on one occasion, and he suffered a diabetic reaction while on duty and driving a patrol car. Id. at 665. The Village terminated Siefken and did not give him a second chance to prove he could successfully

4

control his disease.  Id. at 665, 666-67.  Siefken brought a disability discrimination suit under the ADA, but the district court dismissed the case for failure to state a claim.  Id. at 666.  The Seventh Circuit affirmed, observing that the Village fired Siefken not "because of" his disability, but because he failed to control a controllable disease.  Id. at 667.  Although Siefken was capable of performing the job without accommodation, his failure to control his disease resulted in a failure to fulfill his employer's legitimate job expectations; accordingly, he failed to state an ADA claim.

In the present case, the district court followed the reasoning of Siefken, and we find it persuasive as well.  Burroughs does not dispute that he has a controllable disability.  At the time he was hired as a police recruit, Burroughs himself assured the City that his diabetes was under control.  A preemployment medical evaluation indicated that Burroughs was capable of performing the job with no limitations.  Yet, the undisputed evidence indicates that on two on-duty occasions, he suffered a severe diabetic episode which rendered him unable to function on the job.  Additionally, the undisputed evidence indicates that the episodes were caused by nothing more than poor timing of his meals and activities.  Before removing Burroughs from his position as a police recruit, the City sought another medical evaluation, which indicated that Burroughs should not carry a weapon until he could successfully control his disease.  It is legitimate for the City to expect and require that patrol officers keep themselves functional and alert at all times while on duty.  See id. at 666.  Burroughs failed to meet this legitimate expectation on two occasions, and  the ADA does not require the City to provide him another chance to try to improve his diabetes monitoring technique while on duty as a patrol officer.  See id. at 666-67.

Burroughs argues that the district court erred in relying on Siefken, because a question of fact remains in the present case concerning whether Burroughs was at fault for his on-duty hypoglycemic episodes.  Burroughs attempts to raise a question of fact from Dr. Koppers' statements that he was "extremely compliant in diet" and that there was "good compliance" with the multiple insulin regimen.  (Appellant's App. at 121.)

At one point, Dr. Koppers stated his belief that Burroughs "can perform [the] duties listed as a police officer." (Id.) These isolated comments do not create a question of material fact, because Burroughs has taken them out of context. These statements are taken from Dr. Koppers' initial report dated January 2, 1996, before he had reviewed the medical records of Burroughs' latest on-duty episodes. This initial report outlined the history of Burroughs' illness and the reason for the referral, and closes with the statement, "will review records and send a letter." (Id.) In contrast, Dr. Koppers' letter, written on January 11, 1996, after reviewing the latest reports and reevaluating Burroughs, quite plainly states Dr. Koppers' opinion that while Burroughs can learn to control his disease, he should not be in a position to carry a weapon until he has his disease under control and is able to avoid hypoglycemic episodes. Dr. Koppers' earlier statements do not contradict this conclusion because they were written before the latest evaluation. Furthermore, in Burroughs' own statement and affidavit, he admits that the episodes resulted from changes in his eating schedule. His own eating schedule is a matter within his control. Burroughs has not identified a material question of fact that precludes summary judgment.

Burroughs also argues that the City removed him from active duty on nothing more than a "knee-jerk" reaction based on an "ignoran[t] and baseless fear" (Appellant's Br. at 13) that he might be a danger to the public. He asserts that neither the City nor the district court considered the requisite factors to determine whether he was a "direct threat" to the public as provided in the regulations. See 29 C.F.R. § 1630.2(r) (1998) (defining "direct threat" as a "significant risk of substantial harm" and requiring consideration of factors such as the duration of the risk, the nature and severity of the potential harm, and the likelihood and imminence of the potential harm). We disagree. While an individual may not be qualified for a position if that individual poses a "direct threat" to the health or safety of others, see 42 U.S.C. § 12113(b), the parties in this case agreed that Burroughs was a qualified individual so the "direct threat" inquiry is not exactly on point. Nevertheless, a "direct threat" assessment may "be based on a reasonable medical judgment that relies on the most current medical knowledge and/or

6

the best available objective evidence."  29 C.F.R. § 1630.2(r); see also, Bragdon v. Abbott, 118 S. Ct. 2196, 2210 (1998) (noting in a case under the public accommodations chapter of the ADA that "the risk assessment must be based on medical or other objective evidence").  A risk must be significant to constitute a direct threat.  See Bragdon, 118 S. Ct. at 2210.

The City's decision to remove Burroughs from active patrol duty was made only after Burroughs suffered two hypoglycemic episodes during which Burroughs failed to remain alert and functional while on duty, and the City based the decision on a recent medical evaluation by Dr. Koppers, a diabetes specialist.  The City's letter to Burroughs--outlining his option of resigning or choosing possible continued employment in a demoted capacity--both referred to and relied on Dr. Koppers' reasonable medical judgment assessing Burroughs' recent on-duty episodes.  Dr. Koppers concluded that Burroughs "could conceivably" be a danger to himself or others and should not carry a weapon until he is able to function without significant diabetic episodes. (See Appellant's App. at 86, 120.)  Burroughs takes issue with the alleged speculative nature of this opinion, but neither the City nor the doctor relied on speculation.  The uncontroverted facts demonstrate that Burroughs had recently suffered two significant hypoglycemic episodes while on duty, proving he was not consistently controlling his disease as he had represented at the outset.  Fortunately, no harm occurred to Burroughs or any others during the episodes, but the risk of an armed patrol officer being unable to function in an emergency situation is not a risk we are prepared to force a police department to accept.  The inherent and substantial risk of serious harm arising from such episodes, given the nature of police work, is self-evident.  The City's decision to remove Burroughs from duty was appropriately based on objective evidence and reasonable medical judgment.

We conclude that Burroughs failed to state a claim under the ADA because he was capable of performing the job without accommodation, yet he failed on two occasions to keep himself functional and alert on the job.  Because Burroughs failed to

state a claim, we need not reach his arguments that he was entitled to a reasonable accommodation. We adopt the reasoning of the Seventh Circuit in <u>Siefken</u> and "only hold that when an employee knows that he is afflicted with a disability, needs no accommodation from his employer, and fails to meet the employer's legitimate job expectations, due to his failure to control a controllable disability, he cannot state a cause of action under the ADA." 65 F.3d at 667 (internal quotations and citation omitted).

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT