**UNITED STATES of America Plaintiff**

v.

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY Defendant**

**No. CIV.A. 3:00–CV–377BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 26, 2004.

Cynthia Lynn Eldridge, U.S. Attorney's Office, Jackson, MS, R. Alexander Acosta, John L. Wodatch, Philip L. Breen, L. Irene Bowen, Alyse S. Bass, Amanda Maisels, U.S. Department of Justice, Disability Rights Sect, Civil Rights Div, Washington, DC, for United States of America, plaintiff.

Rickey T. Moore, Office of the Attorney General, Jackson, MS, for Mississippi Department of Public Safety, defendant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment. Having considered the Motion, Response, Rebuttal, and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is not well taken and should be denied.

### I. Background and Procedural History

The Mississippi Department of Public Safety periodically holds "cadet schools" to train potential Mississippi Highway Safety Patrol officers. Ronnie Collins, an insulin-dependent diabetic, applied for the cadet school. As part of the application process, Collins underwent a routine physical examination from a doctor with the highway patrol. During the examination, Collins disclosed that he was diabetic.

On August 29, 1993, Collins arrived at the academy grounds in Rankin County, Mississippi. After an orientation session led by Captain Lee Shelbourn, the head training officer, the cadets engaged in rigorous physical activity until after midnight. Around 2:00 a.m., Collins became hungry and felt a tingling sensation that he associated with low blood sugar levels. He left the barracks and went to the officers' building. Collins asked for permission to use the vending machines, but Sergeant Marlow reminded him that the vending machines were off-limits for new cadets. Instead, Sergeant Marlow offered Collins the extra tuna sandwiches left over from dinner. Collins ate two sandwiches and testified that he experienced no further symptoms of low blood sugar that night. Lieutenant McCain completed a "student contact form" documenting the incident.

On August 30, 1993, Collins and the other cadets engaged in afternoon drills. During the drills, Collins ate several pieces of peppermint candy to combat his low blood sugar. Collins testified that one of the training officers confronted him and told him that eating candy during drills was not allowed. Collins explained that he needed the candy because he was diabetic. The officer did not require him to spit out the peppermint. However, Collins claims that the officer required him to perform extra push-ups because of the candy. The incident was documented in the student contact forms completed by Captain Shelbourn and Sergeant Claiborne. Captain Shelbourn wrote that Collins was allowed to "go ahead and finish [his candy]," and Sergeant Claiborne added that "no action was necessary" because Collins probably "needed the sugar." *See* Student Contact Form, Defendant's Motion for Summary Judgment, Exhibit "B".

At approximately 5:00 p.m., the cadets reported to the cafeteria for dinner. After

eating his dinner and putting away his tray, Collins asked Sergeant Marlow for permission to go through the serving line a second time. Collins claims that he told Marlow that he was diabetic and needed more food. Marlow told Collins that he should have asked the servers for a larger portion and that he should do so in the future. Instead of letting him go through the line a second time, Marlow gave Collins several pieces of fruit. Collins ate the fruit before going to bed that night.

On August 31, 1993, at approximately 5:00 a.m., Trooper Wayne White entered the barracks and ordered the cadets to report to the gymnasium for physical training. When Collins continued to sit on the side of his bed, Trooper White ordered him at least three times to get dressed and report to the gymnasium. Captain Shelbourn entered the barracks and asked Collins why he was not exercising with the other cadets. Captain Shelbourn put his hand on Collins' shoulder. At that point, Defendant claims that Collins "lunged at Captain Shelbourn, who wrote in his contact form that Collins 'grabbed [him] by the shirt.'" *See* Defendant's Brief in Support of Motion for Summary Judgment at 10. Collins was then escorted to the officers' building and dismissed from the cadet school. Collins claims that he does not remember anything that happened in the barracks that morning. However, he claims that after being dismissed from the school, he went to the doctor, and the doctor found that his blood sugar was very low. *See* Collins' Depo. at 70, Defendant's Motion for Summary Judgment, Exhibit "D".

Following his dismissal from the cadet school, Collins unsuccessfully pursued administrative remedies with the Mississippi Employee Appeals Board. Collins then filed a charge of discrimination with the Equal Employment Opportunity Commission in January 1994. The matter was referred to the United States Department of Justice, which brought this action in May 2000. The United States alleged that the Mississippi Department of Public Safety violated that Americans with Disabilities Act [hereinafter "ADA"] in two ways: first, by "discharging Mr. Collins from the training academy for new law enforcement officers because of his disability [i.e., diabetes] despite the fact that he is a qualified individual with a disability....," and second, by "failing or refusing to make reasonable accommodations to Mr. Collins' physical limitations, which were known to the Defendant...." *See* Complaint at ¶ 10. On November 20, 2003, Defendant filed its Motion for Summary Judgment which is now ripe for consideration.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of in-

forming the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

■■■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

### III.  Analysis

The Americans with Disabilities Act provides, in pertinent part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

### 1.  Is Collins' Diabetes a Disability under the ADA

A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual...." 42 U.S.C. § 12102(2). The United States Court of Appeals for the Fifth Circuit has recognized that "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164 (5th Cir.1996) (quoting 29 C.F.R. § 1630.2(j), App. (1995)).

■■■ Defendant argues that the United States has not identified a "major life activity" that has been substantially limited by Collins' diabetes. However, the Fifth Circuit has identified eating as a "major life activity." *Waldrip v. General Electric Co.,* 325 F.3d 652, 655 (5th Cir.2003). Collins testified that he had to change his eating habits once he was diagnosed with diabetes. *See* Collins' Depo. at 13–14, Defendant's Motion for Summary Judgment, Exhibit "D". Collins' ex-wife testified that she "had to shop and cook differently after [Collins] was diagnosed with diabetes." *See* Affidavit of Linda Collins, Response to Defendant's Motion for Summary Judgment. Based on this testimony, the Court cannot find as a matter of law that Collins' diabetes does not qualify as a disability under the ADA.

### 2.  Did Defendant Fail to Accommodate as Required under the ADA

In its Complaint, Plaintiff alleges that Defendant failed or refused to make reasonable accommodations for Collins' physical limitations, which were known to the Defendant. Defendant however argues that the United States has presented no

evidence that the highway patrol refused to provide a reasonable accommodation for Collins' diabetes-related needs or that Plaintiff even requested accommodations.

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant of employee," unless an accommodation would create an "undue hardship" on the employer's business operations. 42 U.S.C. § 12112(b)(5)(A). The Fifth Circuit has stated that

> "In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9, App. (1995). Once such a request has been made, "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." 29 C.F.R. § 1630.9, App. (1995)... Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.

*Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir.1996).

■ The reasonable accommodation claim involves the three incidents during which Collins informed his training officers that he needed to consume more food in order to regulate his blood sugar. One of the incidents occurred during afternoon drills. Collins claims that he was required to perform extra push-ups as a punishment for consuming a peppermint. *See* Collins' Depo. at 42, Defendant's Motion for Summary Judgment, Exhibit "D". Another one of the incidents occurred in the cafeteria the night before his discharge. Collins asked for permission to go through the serving line again but was told by Ser-

geant Marlow that he could only have a few pieces of fruit. Collins testified that after he was given the fruit, Sergeant Marlow "told [Collins] not to bother him again." *See* Collins' Depo. at 48, Defendant's Motion for Summary Judgment, Exhibit "D". The Court cannot find as a matter of law that Collins failed to make the appropriate initial request in order to trigger Defendant's obligation. The Court also cannot find as a matter of law that Defendant provided reasonable accommodations to Collins by providing him with a few pieces of fruit instead of another meal. Therefore, the Court finds that there is a genuine issue of material fact as to whether Defendant provided Collins with reasonable accommodations.

### 3. Was Collins' Dismissal a Violation of the ADA

In the Complaint, Plaintiff alleges that Collins was dismissed from the training academy on the basis of his disability. However, Defendant claims that Collins was dismissed for his uncooperative and aggressive behavior on the morning of August 31, 1993. Defendant argues that "[t]he law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." *Jones v. American Postal Workers Union,* 192 F.3d 417, 429 (4th Cir.1999). The Fifth Circuit has recognized that "the ADA does not insulate emotional or violent outbursts blamed on an impairment. An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim." *Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1052 (5th Cir.1998).

■ The Court cannot find as a matter of law that Collins' dismissal was on account of his misconduct rather than on account of his disability. Collins' situation

is easily distinguishable from the "misconduct" cases cited by Defendant because, in all of Defendant's cases, the plaintiff alone was responsible for his misconduct, and it was not caused by the employer's failure to accommodate. In *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 667 (7th Cir.1995), cited by Defendant, the plaintiff, who had insulin-dependent diabetes, and became hypoglycemic on the job, did not need nor ask for an accommodation and was terminated for "fail[ing] to meet the employer's legitimate job expectations," when he failed to control his diabetes. Collins claims that he requested reasonable accommodations and that it was Defendant's denial of this request that caused his behavior on the morning of August 31, 1993. Defendant acknowledges that "the reasonable accommodation claim is inseparable from the wrongful discharge claim." *See* Defendant's Rebuttal Memorandum in Support of its Motion for Summary Judgment. Therefore, the Court finds that there is a genuine issue of material fact as to whether Collins was dismissed because of his disability.

## IV. Conclusion

Based on the analysis presented above, the Court finds that Defendant's Motion for Summary Judgment should be denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [66–1] is hereby denied.