United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 14, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-11473

RUDY RODRIGUEZ,

                              Plaintiff-Appellant,

versus

CONAGRA GROCERY PRODUCTS COMPANY,

                              Defendant-Appellee.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before  HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Rudy Rodriguez ("Rodriguez") brought this diversity action against Defendant-Appellee ConAgra Grocery Products Co. ("ConAgra") under the Texas Commission on Human Rights Act ("TCHRA") alleging disability discrimination on the basis of his diabetes.  The district court denied Rodriguez's motion for partial summary judgment and granted ConAgra's.  We reverse, grant partial summary judgment to Rodriguez, and remand to the district court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

Plaintiff-Appellant Rudy Rodriguez was diagnosed with Type II diabetes in 1997.  The general term "diabetes" encompasses a

-1-

category of diseases, all of which are characterized by hypoglycemia — heightened blood sugar levels — resulting from the difficulty of the body to eliminate sugar (glucose) from the blood stream. A healthy body produces insulin at adequate levels and uses that insulin to move sugar from the blood stream to within the body's cells where the sugar is used for sustenance. A Type II diabetic like Rodriguez typically has both a reduced ability to produce insulin and a reduced ability to use the insulin that his body does produce. As a result, sugar builds up in the blood stream, leading to hypoglycemia, the most significant danger Type II diabetics face. Hypoglycemia develops gradually, though, and is capable of detection by monitoring blood sugar levels.

Defendant-Appellee ConAgra Grocery Products Company ("ConAgra") owns a plant in Fort Worth, Texas, at which it produces Ranch Style Beans. In January 2002, a temporary staffing agency placed Rodriguez at this plant where, until March of that year, he performed heavy manual labor, including unloading delivery trucks and lifting heavy sacks of beans.

Based on the quality of Rodriguez's work, a supervisor recommended to the plant's Human Resources Manager, Elza Zamora, that ConAgra offer Rodriguez a permanent position. In late February 2002, ConAgra offered Rodriguez a job as a "Production Utility" employee in the plant's production area. The offer was contingent on Rodriguez's passing a background check, a drug screen, and a physical exam.

The following month, with offer in hand, Rodriguez visited Occupational Health Solutions ("OHS"), a private clinic with which ConAgra had a standing contractual arrangement to perform all of its preemployment physical exams. For ConAgra, OHS performs only those specific tests and procedures that ConAgra pre-approves. At the time of Rodriguez's preemployment exam, the standard exam package did not include a blood test to measure the job applicant's blood sugar level.

OHS's Dr. Jerry Morris performed Rodriguez's physical exam. Pursuant to the OHS-ConAgra contract, Dr. Morris was to assess Rodriguez's medical qualification for the Production Utility position at ConAgra. Significantly, however, ConAgra had never provided Dr. Morris with any data or restrictions applicable to the position, and Dr. Morris admitted that when he examined Rodriguez he knew nothing of Rodriguez's job offer or the qualifications necessary for the Production Utility position.

Dr. Morris performed a urinalysis on Rodriguez, which showed an elevated concentration of glucose in his urine. Based on nothing more than Rodriguez's concentrated level of glucose and the fact that Rodriguez could not remember the name of his treating physician or the name of the medication he was taking to control his diabetes, Dr. Morris concluded that Rodriguez's diabetes was "uncontrolled." On the medical form that Dr. Morris submitted to ConAgra, he wrote that Rodriguez was "[n]ot medically qualified" for the position at the plant because of "uncontrolled diabetes."

-3-

Dr. Morris also told Rodriguez that he did not believe Rodriguez was controlling his diabetes.

Rodriguez immediately disputed Dr. Morris's assessment, informing him that Rodriguez "had [had] a complete physical not even two months ago and [his] physical was all right and [he] was taking pills for [his diabetes] and everything and [he] never had no trouble." Indeed, Rodriguez's oral medical history and physical exam confirmed that he suffered no physical or mental problems attributable to his diabetes. And, Dr. Morris testified that he observed no ill-effects attributable to Rodriguez's diabetes.

Following the exam, Rodriguez took his completed medical form to Zamora. She thereupon informed Rodriguez that he would not be hired because (1) he had failed the physical exam, and (2) Dr. Morris did not recommend him for employment.

Four days after ConAgra withdrew the job offer, Rodriguez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"). After both organizations failed to find a violation of Rodriguez's rights, the TCHR issued him a right-to-sue letter. That was in June of 2002; two months later, Rodriguez sued ConAgra in Texas state court, alleging that ConAgra violated the TCHRA[1] when it refused to hire him because of what it perceived to be uncontrolled diabetes. ConAgra removed the case to federal

---

[1] TEX. LAB. CODE § 21.051.

court on the basis of diversity jurisdiction,[2] but the district court remanded it in November of 2002, after concluding that the diversity jurisdiction statute's amount-in-controversy requirement was not satisfied. Rodriguez filed an amended original petition in state court, and ConAgra again removed the suit on diversity grounds, after which the matter proceeded in federal court.

In October 2003, ConAgra filed a motion for summary judgment, and Rodriguez filed for partial summary judgment. In granting ConAgra's motion and dismissing Rodriguez's claims with prejudice, the district court reasoned that "Rodriguez . . . failed to present any evidence tending to demonstrate that his employment offer was withdrawn because of the fact that he had diabetes."[3] "Rather, the overwhelming undisputed evidence is that Zamora withdrew the job offer because she believed that Rodriguez's diabetes was **uncontrolled**."[4] This, according to the district court, is "a distinction with a difference"; "numerous courts have concluded, albeit on differing grounds, that an employer's adverse action in response to a plaintiff's failure to control an otherwise controllable illness does not give rise to a disability discrimination claim."[5] And, in the district court's opinion,

---

[2] 28 U.S.C. § 1332.

[3] Rodriguez v. Conagra Grocery Prods. Co., No. 4:03-CV-055-Y, at 5-6 (N.D. Tex. filed Sept. 16, 2004).

[4] Id. at 6 (emphasis in original).

[5] Id.

diabetes is a "generally controllable" illness.[6]  Therefore, ruled the court, Rodriguez did not have a claim under the TCHRA.[7] Rodriguez timely filed a notice of appeal.[8]

## II. ANALYSIS

### A.    Standard of Review

We review both grants and denials of summary judgment motions de novo.[9]  "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then summary judgment in favor of that party is appropriate.[10] Initially, it is the moving party's burden to "show[ that] there is no genuine issue of material fact"; if that burden is met, then the nonmoving party must "produce evidence or designate specific facts showing the existence of a genuine issue for trial."[11]  In conducting our analysis, we resolve any doubts and draw any

---

[6] Id.

[7] Id.

[8] Rodriguez is supported in this case by several amici: the EEOC; the American Association of Retired Persons; Advocacy, Inc.; the American Diabetes Association; and the Coalition of Texans with Disabilities.

[9] Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003).

[10] FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

[11] Gowesky, 321 F.3d at 507 (internal quotation marks omitted).

reasonable inferences raised by the evidence in favor of the nonmoving party.[12]

## B. The Texas Commission on Human Rights Act and the Americans with Disabilities Act

The TCHRA, like the Americans with Disabilities Act ("ADA"),[13] prohibits employment-based discrimination grounded in an individual's disability.[14] Given the similarity between the ADA and the TCHRA, Texas courts "look to analogous federal precedent for guidance when interpreting the Texas Act."[15] As must federal diversity courts when deciding an issue of state law, we will follow the Texas courts' lead. Our analysis today is thus focused on those analogous federal precedents and their interpretation of the federal act banning discrimination in employment on the basis of disability: the ADA.

The ADA makes it unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application

---

[12] Id.

[13] 42 U.S.C. § 12101 et seq.

[14] TEX. LAB. CODE § 21.051 (characterizing as "an unlawful employment action" an adverse employment action taken by an employer because of an individual's "disability").

[15] NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999); see also Herrera v. CTS Corp., 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002) ("The [TCHRA] purports to correlate state law with federal law in the area of discrimination in employment. Federal law prohibiting disability discrimination by employers is found in the . . . [ADA], and thus courts must look to this statute in interpreting the TCHRA.") (citations and quotations omitted).

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[16] The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[17] "The term 'disability' means, with respect to an individual —— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[18] Finally, even if an employer discriminates against a "qualified individual with a disability," that employer can avoid liability by asserting a legitimate justification for its action, including that the plaintiff, if hired, would "pose a direct threat to the health or safety of other individuals in the workplace."[19]

Taken together, these statutory and regulatory rules require that a plaintiff situated like Mr. Rodriguez establish three elements: (1) At the time he sought employment he had a

---

[16] 42 U.S.C. § 12112(a).

[17] Id. § 12111(8).

[18] Id. § 12102(2)(A)-(C) (emphasis added). The parties agree that diabetes is a "physical . . . impairment" within the meaning of the TCHRA/ADA.

[19] Id. § 12113(b).

"disability" within the meaning of the ADA; (2) he was qualified for the position for which he sought employment; and (3) he was not hired because of his disability.[20] ConAgra has waived any argument that Rodriguez was not qualified for the Production Utility position,[21] and it has expressly declined to employ the "direct threat" defense to liability. Thus, the instant dispute turns entirely on the first and third of the Gonzales prongs: At the time that ConAgra withdrew its offer to employ Rodriguez, did he have a "disability" within the meaning of the ADA; and, if so, did ConAgra withdraw the job offer because of that disability.

We conclude that the district court erred when it held that ConAgra did not withdraw Rodriguez's job offer because of his diabetes. Rodriguez has adduced sufficient evidence to establish that: (1) He was "regarded as" substantially impaired in a major life activity by ConAgra; and (2) ConAgra withdrew its offer to employ him because of his perceived disability. As we explain more fully below, ConAgra's argument that Rodriguez's "failure to control" his diabetes obviates the protection of the ADA is a red herring. This case is not about "failure to control"; rather, it

_____

[20] See Gonzales v. City of New Braunfels, Tex., 176 F.3d 834, 836 (5th Cir. 1999); Hamilton v. Sw. Bell Tel. Co., 136 F.3d 1047, 1050 (5th Cir. 1998).

[21] ConAgra waived this argument by failing to brief it. See Commc'n Workers of Am. v. Ector County Hosp. Dist., 392 F.3d 733, 748 (5th Cir. 2004); see also FED. R. APP. P. 28(a)(9)(A) (stating that appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

is a garden variety "regarded as disabled" case. In such cases, the question of control is never relevant: Any rule requiring that a plaintiff exercise some level of control over his impairment —— assuming arguendo that such a rule even exists —— is relevant and applies only in an actual disability case. At its core, this case is about the TCHRA/ADA's emphasis on treating impaired job applicants as individuals. ConAgra's blanket policy of refusing to hire what it characterizes as "uncontrolled" diabetics violates this fundamental tenet of ADA law; it embraces what the ADA detests: reliance on "stereotypes and generalizations"[22] about an illness when making employment decisions.

1.  **ConAgra Regarded Rodriguez as "Disabled" Within the Meaning of the TCHRA/ADA**

    a.  **Background Law**

This case falls squarely under the "regarded as" prong of the ADA's disjunctive definition of disability. Rodriguez's theory of recovery is that at the time ConAgra withdrew his job offer, it regarded him as having a physical impairment that substantially limited him in the major life activity of working, not that he in fact had such an impairment.

Under the ADA, a plaintiff is "regarded as" disabled if he:

---

[22] EEOC v. Prevo's Family Mkt., Inc., 135 F.3d 1089, 1097 (6th Cir. 1998).

> (1) has an impairment which is not substantially limiting but which the employer perceives as . . . substantially limiting . . . ; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.[23]

Rodriguez asserts that his case falls within the first of Bridges's three categories. Accordingly, Rodriguez had to show that at the time ConAgra withdrew his job offer (1) his diabetes did not actually substantially limit him in a major life activity, and (2) ConAgra nonetheless perceived his diabetes to be substantially limiting. As Rodriguez grounds his "regarded as" claim on the major life activity of working,[24] he had to demonstrate that ConAgra believed that he was "unable to work in a broad class of jobs."[25] To that end, Rodriguez needed to prove that ConAgra perceived him to be "precluded from more than one type of job, a specialized job,

---

[23] Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).

[24] In this circuit, "[t]he ability to engage in gainful employment" qualifies as a major life activity. Gowesky, 321 F.3d at 508; see also 29 C.F.R. § 1630.2(j)(3) (delineating the contours of the major life activity of working).

[25] Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999) (emphasis added); see also 29 C.F.R. § 1630.2(j)(3)(i) (Defining "substantially limit[ed] in the major life activity of working as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

-11-

or a particular job of choice."[26]  Rodriguez unmistakably carries this burden.

### b.   Rodriguez's Evidence

#### (i)   Rodriguez Proved that His Diabetes Was Not Substantially Limiting

Rodriguez adduced sufficient evidence to establish that his diabetes did not substantially limit him in a major life activity. For example, Rodriguez stated in his affidavit: "At no time in my life have I experienced any physical or mental problem, other than a temporary illness or injury, that has affected my ability to work."  His personal physician, Ramon D. Garcia, averred that "[f]or as long as I have been treating Rudy Rodriguez, dating back to approximately 1999, he has not suffered any complications as a result of his diabetes."  As ConAgra made no attempt to challenge this evidence, we conclude that Rodriguez's diabetes did not substantially limit him in a major life activity.

The only evidence in the record that <u>could</u> be used to find that Rodriguez's diabetes was in fact substantially limiting is the hyperbole of Dr. Morris that "outside of a padded room where he could even then fall and break his neck from dizziness or fainting," there is no working environment in which Rodriguez would

---

[26] <u>Sutton</u>, 527 U.S. at 492.

be safe.[27]   But as we explain below,[28] Dr. Morris did not base his assessment on the individualized review of Rodriguez that the ADA requires.[29]   An assessment not reached in an individualized manner is not an assessment that we can credit, at least with regards to whether Rodriguez is <u>actually</u> substantially limited by his diabetes.[30]

### (ii) Rodriguez Proved that ConAgra Regarded Him as Precluded From a Wide Range of Jobs

To determine whether ConAgra regarded Rodriguez's diabetes as a substantially limiting impairment, we focus on the statements of ConAgra itself, primarily those of its decisionmaker, Ms. Zamora, and of Dr. Morris, on whom Zamora relied in making her decision.[31]

---

[27] ConAgra, though, does not try to use Dr. Morris's statement in this fashion.

[28] <u>See</u> <u>infra</u> Part II.B.3.b.

[29] <u>See, e.g.</u>, <u>Sutton</u>, 527 U.S. at 482-84.

[30] It is, though, an assessment that we can credit with regards to whether ConAgra <u>regarded</u> Rodriguez as substantially limited in the major life activity of working.   <u>See</u> <u>infra</u> note 31 and accompanying text.

[31] <u>See</u> <u>Deas v. River West, L.P.</u>, 152 F.3d 471, 476 n.9 (5th Cir. 1998) (citing <u>Runnebaum v. NationsBank of Md.</u>, 123 F.3d 156, 172 (4th Cir. 1997)).
ConAgra argues that Rodriguez may not rely on the testimony of Dr. Morris to establish that ConAgra regarded Rodriguez as substantially limited in a major life activity.   This argument is meritless.   "Employers do not escape their legal obligations under the ADA by contracting out certain hiring and personnel functions to third parties."   <u>Holiday v. City of Chattanooga</u>, 206 F.3d 637, 645 (6th Cir. 2000); <u>see also</u> <u>id.</u> (noting that the "ADA expressly prohibits employers from 'participating in a contractual or other arrangement that has the effect of subjecting a covered entity's qualified applicant or employee to . . . discrimination'") (quoting

-13-

First, Rodriguez presented ConAgra's response to his interrogatories, in which ConAgra admitted its position that Rodriguez was not qualified for any other position at its plant:

> **Interrogatory No. 7:** Was Plaintiff qualified for any other positions at ConAgra Foods? Please include in your answer any positions for which he would have been qualified with a reasonable accommodation on your part.
>
> **Answer:** No.

Alone, this statement is sufficient to support a reasonable fact-finder's conclusion that ConAgra considered Rodriguez unable to perform a broad class of jobs.[32] When this statement is coupled with the fact that ConAgra withdrew Rodriguez's job offer for the express reason that it viewed him as unfit for the entry-level Production Utility position —— which is a job that, because it

_____

42 U.S.C. § 12112(b)(2)); Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 31 (1st Cir. 2002) (relying on Holiday); EEOC v. Texas Bus Lines, 923 F. Supp. 965, 973-74 (S.D. Tex. 1996); 42 U.S.C. § 12112(b)(2) (defining "discriminate" to include "participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to" discrimination); cf. 42 U.S.C. § 12112(d)(1) (extending the ADA's prohibition of discrimination to "medical examinations and inquiries").

[32] In its brief to this court, ConAgra now tries to explain away this answer, contending that it viewed Rodriguez as not "'qualified' for any other positions at the plant" because of a collective bargaining agreement that precluded ConAgra from considering outside hires for fourteen of the plant's sixteen positions. We are not convinced.

"[Q]ualified" is a term of art in the ADA context; an individual is "qualified" if "with or without reasonable accommodation, [she] can perform the essential functions of the employment position that such individual . . . desires." 42 U.S.C. § 12111(8) (emphasis added). And without caveat, ConAgra flatly stated that Rodriguez is not "qualified" for any other position at its plant. Its post-hoc explanation just does not hold water.

requires only the most basic skills and abilities, virtually any able-bodied person could perform — it follows inescapably that ConAgra viewed Rodriguez as unfit to perform a wide range of jobs.

This same analysis applies to Zamora. In her deposition, Zamora stated that, based on Dr. Morris's assessment, she viewed Rodriguez's diabetes as uncontrolled. She confirmed that, in her mind, an uncontrolled diabetic is one who is not taking his medication. This, according to Zamora, could lead to dizziness and blacking out, thereby preventing Rodriguez from performing the essential duties of his job. Like ConAgra itself, if Zamora regarded Rodriguez as unable to perform the Production Utility position because of his diabetes, then there are essentially no manual labor jobs for which she regarded him as being able to perform.

Finally, Dr. Morris testified that the results of Rodriguez's urinalysis made him unfit to perform any manual labor job. In Dr. Morris's own words, "[O]utside of a padded room where he could even then fall and break his neck from dizziness or fainting, I don't know that there would be a safe environment that we could construct."

This summary judgment evidence shows beyond cavil, as a matter of law, that ConAgra regarded Rodriguez's diabetes as substantially limiting his ability to engage in the major life activity of working. Undeterred, though, ConAgra continues to disagree.

### c. ConAgra's Position

In response to Rodriguez's compelling evidence, ConAgra wields a broad ax in lieu of a scalpel, arguing expansively that the ADA's protection simply does not extend to Rodriguez. Its flawed syllogism goes: (1) Rodriguez has failed to control his diabetes; (2) because diabetes is a "generally controllable" illness,[33] ConAgra regarded Rodriguez not as suffering generally from the impairment of diabetes, but rather as suffering from the impairment of the more specific underlined_uncontrolled diabetes; ergo (3) uncontrolled diabetes —— or, as ConAgra puts it, a plaintiff's "failure to control [his] controllable" impairment —— is not an impairment that is protected by the ADA. This overbroad generalization widely misses the mark.

In firing its broadside argument, ConAgra cites to no less than seventeen decisions purporting to support its proffered "failure to control" rule. This extensive citation list, however, suffers from a fatal flaw: Each decision in the list is completely inapposite to this case. In fact —— even if we were to assume arguendo that ConAgra's "failure to control" rule were a valid interpretation of the ADA[34] —— the rule itself would remain totally

_____

[33] Rodriguez, No. 4:03-CF-055-Y, at 7.

[34] Notably, ConAgra makes no attempt whatsoever to justify the "failure to control" rule or to explain why it is a legitimate reading of the ADA. It need not have looked far, though, to round up the competing arguments —— the rule's validity, which we need not address today, is a thorny and contentious issue. Compare Jill Elaine Hasday, Mitigation and the Americans with Disabilities Act, 103 MICH. L. REV. 217, 225-26 (2004) (arguing in favor of imposing a duty on impaired individuals to mitigate the effects of their impairment) with Sarah Shaw, Comment, Why Courts Cannot Deny ADA

inapposite to this case.

Fifteen of the seventeen cases to which ConAgra cites are <u>not</u> "regarded as" disability cases at all: Fourteen of them involved an <u>actual</u> disability[35] and one involved the plaintiff's <u>record</u> of an actual disability.[36]  In other words, the plaintiffs in these cases

_____

Protection to Plaintiffs Who Do Not Use Available Mitigating Measures for Their Impairments, 90 CAL. L. REV. 1981, 1984-85 (2002) (arguing the opposite).

[35] <u>See</u> <u>Hein v. All Am. Plywood Co.</u>, 232 F.3d 482, 487 (6th Cir. 2000); <u>Burroughs v. City of Springfield</u>, 163 F.3d 505, 506 (8th Cir. 1998); <u>Van Stan v. Fancy Colours & Co.</u>, 125 F.3d 563, 566 (7th Cir. 1997); <u>Siefken v. Village of Arlington Heights</u>, 65 F.3d 664, 665 (7th Cir. 1995); <u>White v. Coyne Int'l Enterprises Corp.</u>, No. 3:02-CV-7505, 2003 WL 22060545, at *2 (N.D. Ohio July 23, 2003); <u>Johnson v. Maynard</u>, No. 01-CIV.7393, 2003 WL 548754, at *4 (S.D.N.Y. Feb. 25, 2003);  <u>Rose v. Home Depot U.S.A., Inc.</u>, 186 F. Supp. 2d 595, 596 (D. Md. 2002);  <u>Hewitt v. Alcan Aluminum Corp.</u>, 185 F. Supp. 2d 183, 186 (N.D.N.Y. 2001); <u>Brookins v. Indianapolis Power & Light Co.</u>, 90 F. Supp. 2d 993, 995 (S.D. Ind. 2000); <u>Tangires v. Johns Hopkins Hosp.</u>, 79 F. Supp. 2d 587, 589 (D. Md. 2000); <u>Bowers v. Multimedia Cablevision, Inc.</u>, No. 96-1298-JTM, 1998 WL 856074, at *4 (D. Kan. Nov. 3, 1998); <u>Pangalos v. Prudential Life Ins. Co. of Am.</u>, No. 96-0167, 1996 WL 612469, at *1 (E.D. Pa. Oct. 15, 1996); <u>Roberts v. County of Fairfax, Va.</u>, 937 F. Supp. 541, 547-48 (E.D. Va. 1996); <u>Franklin v. U.S. Postal. Serv.</u>, 687 F. Supp. 1214, 1216 (S.D. Ohio 1988).

[36] <u>See</u> <u>Winters v. Pasadena Indep. Sch. Dist.</u>, 124 Fed. Appx. 822, 823 (5th Cir. 2005).
The other two cases on which ConAgra relies, <u>Bayless v. Orkin Exterminating Co.</u>, No. 02-50560 (5th Cir. May 5, 2003) (per curiam), and <u>Burrell v. Cummins Great Plains, Inc.</u>, 324 F. Supp. 2d 1000 (S.D. Iowa 2004), are equally irrelevant.  Both cases did involve "regarded as" disability claims.  But contrary to ConAgra's description of <u>Bayless</u>, we did not reject the plaintiff's claim "because his diabetes was not well controlled."  Rather, we rejected the plaintiff's claim because his employer did not regard his impairment as a "'permanent or long-term'" limitation on a major life activity. No. 02-50560, slip op. at 7-8 (quoting <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 198 (2002)).  And in <u>Burrell</u>, the district court grounded its finding that the plaintiff's employer did not regard him as substantially limited in the major life activity of working on the fact that "in light of

contended that they suffered (or had a record of suffering) from an impairment that <u>actually</u> substantially limited their ability to engage in a major life activity.  This distinction is important because in an "actual disability" case <u>there is something for the plaintiff to control</u>, namely the substantially limiting impairment from which the plaintiff claims to suffer.  In stark and telling contrast, <u>"regarded as"</u> disability claims, like Rodriguez's, are grounded in the foundational distinction that the plaintiff's impairment is <u>not</u> substantially limiting.  Stated differently, in this and all other cases involving only a "regarded as" disability claim, <u>there is nothing for the plaintiff to control or mitigate</u>.  Thus, applying the supposed "failure to control" rule in a "regarded as" case just makes no sense.[37]

In a world governed by such reasoning, an impaired but not substantially limited plaintiff who asserts only a "regarded as" ADA claim could never succeed: No one can "control" a nonlimiting

---

[plaintiff's] skills and the array of jobs available to [him] utilizing those skills, <u>[he] has failed to show that he is regarded as unable to perform a class of jobs</u>."  324 F. Supp. 2d at 1017 (emphasis added).  The <u>Burrell</u> court's only discussion of the plaintiff's failure to control his medical condition was in the context of how that failure to control <u>made the plaintiff a safety risk to the employer</u>.  <u>Id.</u> at 1018.  How this helps ConAgra's case is unclear, as ConAgra has specifically disavowed any reliance on the possible safety risks posed by Rodriguez as a basis for its decision to withdraw his job offer.

[37] <u>Cf.</u> Debra Burke & Malcolm Abel, <u>Ameliorating Medication and ADA Protection: Use It and Lose It or Refuse It and Lose It?</u>, 38 AM. BUS. L.J. 785, 800 (2001) (noting that a rule establishing a duty to mitigate the effects of a substantially limiting impairment would "appl[y] only to the case of an actual disability").

impairment that <u>by definition is merely "regarded as" substantially limiting</u>.  Such an <u>imagined</u> condition cannot ⸺ and thus need not ⸺ be controlled.  An effort like ConAgra's to apply the "failure to control" rule to a "regarded as" claim is a logical impossibility that flies in the face of Congress's and the Texas legislature's explicit determinations that the ADA and the TCHRA <u>should</u> protect an individual who is not limited by his impairment but who is nonetheless "regarded as" substantially limited.[38]  We reject ConAgra's attempt to insert interstitially its "failure to control" rule into this case.  Thus, we need not address the substantive question whether the rule itself is a valid interpretation of the TCHRA/ADA, leaving that determination for another day.  Rodriguez is entitled to summary judgment that ConAgra regarded him as substantially limited in the major life activity of working by his diabetes.

**2. ConAgra Concedes that It Withdrew Rodriguez's Job Offer Because of His Diabetes**

ConAgra has made resolution of this prong of the TCHRA/ADA analysis easy: In its appellate brief, ConAgra twice <u>concedes</u> (albeit coupled with an irrelevant caveat) that it withdrew Rodriguez's job offer because it regarded him as substantially limited by his diabetes in the major life activity of working.  In that caveat, ConAgra continues to contend that the allegedly "uncontrolled" nature of Rodriguez's diabetes saves it from

---

[38] <u>See</u> 42 U.S.C. § 12102(2)(C); TEX. LAB. CODE § 21.051.

liability. At its core, ConAgra's argument is that Rodriguez's alleged "failure to control" his diabetes constitutes a legitimate, nondiscriminatory justification (à la McDonnell Douglas Corp. v. Green[39]) for its withdrawal of Rodriguez's job offer. This argument depends for its very viability on ConAgra's underlying assumption that its "failure to control" rule is both valid and applicable in this "regarded as" action: Rodriguez's alleged "failure to control" his diabetes would qualify as a "legitimate"[40] justification for ConAgra's withdrawal of the job offer only if a "failure to control" one's substantially limiting impairment did in fact obviate the protection of the ADA. This contention, however, is yet another red herring: As we have already emphasized, this is a "regarded as" case, so the purported "failure to control" rule, even if valid, simply does not apply here and thus need not be addressed today. ConAgra's admission that it withdrew Rodriguez's job offer because of its perception that he suffers from uncontrolled diabetes, is the functional equivalent of an admission that it withdrew the offer because it regarded him as substantially limited by his diabetes.

Related to the "because of" prong of the TCHRA/ADA analysis is the question of discriminatory intent. On this point, ConAgra argues that neither Rodriguez nor we have any reason to believe that it harbors ill-will towards diabetics as a class. We agree,

---

[39] 411 U.S. 792, 802 (1973).

[40] Id.

especially considering the evidence establishing that ConAgra employs a number of diabetics — albeit those whom it characterizes as "controlled" — at its Ranch Style Beans plant. But both that evidence and ConAgra's assertion are beside the point. This case is one of those rare ADA cases in which we are presented with <u>direct</u> (rather than circumstantial) evidence of discriminatory intent: ConAgra and Ms. Zamora have both <u>admitted</u> that Rodriguez did not get his job because of his allegedly uncontrolled diabetes. Discrimination — even if not motivated by animus towards the discriminated-against individual — can still be invidious. And that is the case here: Without giving Rodriguez the chance to be evaluated based on his own individualized experience with diabetes, ConAgra lumped him into a class with all putative "uncontrolled" diabetics and summarily denied him the Production Utility job. The ADA does not draw lines between this type of discrimination and that motivated by open-hostility. All disability discrimination in employment is unlawful.[41] Rodriguez is entitled to partial summary judgment of liability on his disability discrimination claim.[42]

---

[41] <u>Cf.</u> <u>Vaughn v. Edel</u>, 918 F.2d 517, 522-23 (5th Cir. 1990) (reversing the district court's denial of a Title VII race discrimination claim; reasoning that Title VII prohibits even disparate treatment grounded in race but motivated by "self-interest rather than racial hostility").

[42] ConAgra puts forth two additional arguments that, because the "failure to control" rule is inapplicable to this case, are also easily dismissed. First, ConAgra argues that the TCHRA/ADA does not protect a plaintiff whose employer <u>mistakenly</u> regards a plaintiff's controllable impairment as uncontrolled. Second, ConAgra argues that Rodriguez presented no evidence to the district court that his diabetes was in fact under control. Obviously, both

### 3. The Allegedly Uncontrolled State of Rodriguez's Diabetes Does not Provide a Legitimate Justification for ConAgra's Withdrawal of the Job Offer

Even if ConAgra's "failure to control" rule <u>were</u> a valid interpretation of the ADA, for another independent reason ConAgra's assertion of the rule in this case as a justification for withdrawing Rodriguez's job offer fails <u>McDonnell Douglas</u>'s requirement of legitimacy. In assessing Rodriguez's fitness for the Production Utility position, ConAgra failed to follow the ADA's mandate that it measure the impact of Rodriguez's diabetes on his ability to work <u>in an individualized manner</u>.[43] Without such an individualized assessment, ConAgra had no way of knowing whether Rodriguez's presumed failure to control his diabetes would <u>actually</u> prevent him from performing the requirements of the position. Such knowledge, however, is a key component of each of the cases involving an actual (or a record of an actual) disability that ConAgra cites in support of its "failure to control" rule. Every one of those courts was presented with <u>particularized evidence</u> of how the impaired employee's failure to control his impairment

---

arguments assume that the "failure to control" rule applies here. As we have shown, it does not, making both arguments meritless.

[43] Indeed, had there been an individualized review of Rodriguez's abilities, we likely would not even be here today. This is a "regarded as" case of disability discrimination; as such it is premised on ConAgra's <u>mistaken</u> perception of Rodriguez as substantially limited by his diabetes. Had ConAgra performed the individualized review the ADA requires, it likely would have discovered that Rodriguez is not <u>actually</u> substantially limited by his diabetes.

rendered him unable to perform his job adequately.[44]  Here, there was no such particularized evidence, and there could not have been any without the individualized review required by the ADA.  In fact, all of the particularized evidence available to ConAgra about Rodriguez's ability to perform his job established exactly the opposite: He received the full-time employment offer precisely because he <u>was already</u> performing up to ConAgra's expectations. Without any actual evidence of Rodriguez's unsuitability for the Production Utility position, ConAgra had to rely on precisely the type of "'stereotypes and generalizations'" about diabetes and diabetics that the ADA abhors.[45]  Such reliance is impermissible; it renders ConAgra's purportedly legitimate justification for its withdrawal of Rodriguez's job offer discriminatory.

---

[44] <u>See, e.g.</u>, <u>Siefken</u>, 65 F.3d at 667 (holding that "when an employee knows that he is afflicted with a disability, needs no reasonable accommodation from his employer, <u>and fails to meet the employer's legitimate job expectations</u>, due to his failure to control a controllable disability, he cannot state a cause of action under the ADA.") (emphasis added).

[45] <u>Gillen</u>, 283 F.3d at 29 (quoting <u>Prevo's Family Mkt., Inc.</u>, 135 F.3d at 1097).

-23-

> **a.** **The TCHRA/ADA's Requirement of Individualized Assessment**

In its Sutton,[46] Toyota Motor Manufacturing,[47] and Murphy v. UPS, Inc.[48] decisions, the Supreme Court repeatedly emphasized "the individualized approach of the ADA."[49] The ADA is, after all, an anti-discrimination law; as such, it is meant to discourage —— not to promote —— the use of class-based grounds in employment-related decisionmaking. Under this individualized approach, the question whether an applicant is disabled must be answered "in . . . a case-by-case manner."[50] Employers cannot rely on "perceptions of [a] disability based on 'myth, fear or stereotype'"[51]; rather, they must evaluate an applicant in her actual state. In other words, employers must focus on whether the particular applicant before it is actually substantially limited by his impairment and on whether the applicant is actually capable of performing the essential functions of the job at issue.[52] This emphatic focus on the

---

[46] 527 U.S. at 482-84.

[47] 534 U.S. at 198-99.

[48] 527 U.S. 516, 521 (1999).

[49] Sutton, 527 U.S. at 484; see also Kapche v. City of San Antonio, 304 F.3d 493, 499 (5th Cir. 2002) ("These intervening Supreme Court cases consistently point to an individualized assessment mandated by the ADA under various sections of the Act.").

[50] Toyota Motor Mfg., Ky., Inc., 534 U.S. at 198.

[51] 29 C.F.R. § 1630.2(l) App.

[52] See Sutton, 527 U.S. at 482-84; cf. Nawrot v. CPC Int'l, 277 F.3d 896, 904 (7th Cir. 2002) (noting that in analyzing whether a

individual applicant's actual abilities "effectuate[s] one of the primary goals of the ADA: 'to prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics.'"[53]  Further, the importance of proceeding in a case-by-case manner is even more pronounced when an impairment such as diabetes is at issue: "An individualized assessment of the effect of an impairment <u>is particularly necessary when the impairment is one whose symptoms vary widely from person to person</u>."[54]

### b. ConAgra Did Not Assess the Effect of Rodriguez's Diabetes in an Individualized Manner

The record in this case unequivocally establishes that ConAgra did not base its decision to withdraw Rodriguez's job offer on the

---

plaintiff is disabled, courts should not "meander in 'would, could, or should-have' land"; rather, courts should "consider only the [mitigating] measures actually taken and consequences that actually follow").

[53] <u>Gillen</u>, 283 F.3d at 29 (quoting <u>Prevo's Family Mkt., Inc.</u>, 135 F.3d at 1097); <u>see also</u> <u>Sutton</u>, 527 U.S. at 483 (rejecting an approach to the disability determination that would "force [employers to rely on] general information about . . . an impairment . . . , rather than on the individual's actual condition").  Such generalizations about diabetes clearly influenced the district court's resolution of this case, as shown by its characterization of diabetes as "generally controllable." <u>See</u> <u>Rodriguez</u>, No. 4:03-CV-055-Y, at 7.  Under an individualized approach to the ADA, whether or not diabetes is "generally controllable" simply is not relevant.  What is relevant is the <u>specific and individualized effect</u> of the diabetes on the plaintiff at issue.

[54] <u>Toyota Motor Mfg., Ky., Inc.</u>, 534 U.S. at 199 (emphasis added).

kind of individualized and fact-intensive assessment envisioned by the ADA.  To start with, Rodriguez's offer was withdrawn on the basis of ConAgra's <u>blanket</u> determination that it would not hire <u>any</u> diabetic who its physicians characterize as "uncontrolled," regardless whether the particular diabetic might be able to perform the essential functions of the job at issue.  Such a policy not only ignores the ADA's mandate that employers consider an impaired applicant on the basis of his actual abilities, but it also empowers ConAgra to make an end-run around the ADA's prohibition of discrimination.[55]

Any possible doubt as to whether ConAgra proceeded in an individualized manner is dispelled by Ms. Zamora's deposition testimony showing that her view of Rodriguez's diabetes (and of diabetes in general) was colored by "stereotypes and

---

[55] A hypothetical case will illustrate the potential for ConAgra's end-run: Consider employee "A" who suffers from a walking impairment and who, as a result, walks with a limp.  Even with his limp, A is able to perform his job up to his employer's expectations.  A's limp could be corrected through the use of a cane, but for personal, legitimate reasons, A has chosen not to use a cane.  Unfortunately, A's limping makes his employer, "Z" — who harbors a prejudice against limpers — uncomfortable.  Z sends A to the company doctor, who conveniently concludes that A has failed to control his otherwise controllable impairment by refusing to use a cane.  Under the theory advanced by ConAgra in this case, Z would then be free, notwithstanding the ADA, and notwithstanding A's adequate job performance, to terminate A's employment simply because of Z's discomfort with A's limp.  Z would just need to follow ConAgra's argument here: "Yes, A is disabled.  Yes, he is otherwise qualified for his job.  And yes, he is performing his job up to our legitimate expectations.  But no, we did not fire him because of his impairment; we fired him because of his <u>failure to control his impairment</u>.  And A's failure to control his controllable impairment is not protected by the ADA."

generalizations" about the illness.[56]  At one point, Rodriguez's counsel asked Zamora:

> **Q**: Do you know whether all diabetics take medication?
> **A**: I believe they do, yes.
> **Q**: And do you believe that if someone is diabetic and not taking medication that they have uncontrolled diabetes?
> **A**: Yes.  I understand that to be true.
> . . .
> **Q**: So is there a way for a diabetic to control diabetes without medication?
> . . .
> **A**: I would think not.

Dr. Morris himself, though, flatly answered "No" when asked in his deposition whether "all diabetics need to take medication." According to Dr. Morris, some diabetics are able to manage their illness through "diet and exercise."

This exchange demonstrates that Zamora (the decisionmaker in this case) harbored fundamental misunderstandings — and employed prejudices — about diabetes.  Yet despite her misunderstandings, Zamora never asked Dr. Morris what he meant to convey by describing Rodriguez's diabetes as "uncontrolled."  Rather, Zamora relied unscientifically on her personal concepts about the illness gleaned from working with diabetics and from having two diabetic parents. On this flimsy foundation — and without giving any consideration to the actual, individualized impact of Rodriguez's diabetes on his life — Zamora concluded that she "know[s] that if [a diabetic] do[esn't] have [his] medication to control diabetes, it certainly presents a risk factor."  When asked what kinds of risks, Zamora

---

[56] _Prevo's Family Mkt., Inc._, 135 F.3d at 1097.

said, "I know that, again, talking to our employees that are diabetic . . . , that if they're not taking their medication on time and if they are not eating the proper foods at specific times, it could cause them to become dizzy and possibly blackout." Perhaps most telling is this next statement by Zamora, as it proves how deeply her misunderstanding of diabetes affects her hiring decisions:

> **Q**: Would you hire a diabetic who does not take medication to work at ConAgra?
> **A**: I would have to say if it's uncontrolled, if the diabetes is uncontrolled, I wouldn't hire — he would not be hired.

To summarize, despite the fact that ConAgra's own doctor stated that a diabetic <u>can</u> control his illness without medication, Zamora elected to rely on her own beliefs regarding the <u>general</u> nature of the illness to conclude that <u>any</u> unmedicated diabetic presents too significant a risk to hire. Her belief, though, amounts to nothing more than speculation about the danger <u>actually</u> posed by Rodriguez. Indeed, Zamora admitted as much:

> **Q**: Let me put it this way. Do you know if someone analyzed, based on [Rodriguez's] own physical limitations, whether he was, likely, to cause injury to himself or others?
> **A**: I don't know.

Post-<u>Sutton</u>, speculation about the hypothetical risks posed by a diabetic is not a legitimate ground on which to make an employment decision. The <u>Sutton</u> Court, after all, specifically rejected an approach that "would, in many cases, force [the decisionmaker] to make a disability determination based on general

-28-

information about how an uncorrected impairment usually affects individuals, rather than on the individual's <u>actual condition</u>.[57] That, however, is precisely what happened in this case. Zamora decided not to hire Rodriguez based on her general beliefs (and misconceptions) about the risks Rodriguez posed as an allegedly uncontrolled diabetic.

Finally, ConAgra cannot escape its obligation to evaluate Rodriguez's actual abilities, notwithstanding his diabetes, by blindly relying on the assessment of Dr. Morris. Dr. Morris testified that he had no knowledge of the position for which ConAgra was considering Rodriguez. Indeed, he had not even been informed by ConAgra of any of the essential functions for which Rodriguez would be responsible if hired. This, in itself, belies the notion that Dr. Morris subjected Rodriguez to the individualized assessment mandated by the ADA. As the First Circuit has noted, "a medical opinion is often cogent evidence of nondiscriminatory intent — in some instances, it may even be

---

[57] <u>Sutton</u>, 527 U.S. at 483 (emphasis added). The EEOC has elaborated on this point:

> The results of a medical inquiry or examination may not be used to disqualify persons who are currently able to perform the essential functions of a job, either with or without an accommodation, <u>because of fear or speculation that a disability may indicate a greater risk of future injury</u>, or absenteeism, or may cause future workers' compensation or insurance costs.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, TECHNICAL ASSISTANCE MANUAL ON THE EMPLOYMENT PROVISIONS (TITLE I) OF THE AMERICANS WITH DISABILITIES ACT § 6.4 (1992) (emphasis added).

enough to justify summary judgment —— but the mere obtaining of such an opinion does not automatically absolve the employer from liability under the ADA."[58]  The employer has an obligation to ensure that its applicants are treated as individuals; "[t]hus, an employer cannot slavishly defer to a physician's opinion without first pausing to assess the objective reasonableness of the physician's conclusions."[59]

## CONCLUSION

For the foregoing reasons, we reverse the district court's grant of ConAgra's motion for summary judgment and that court's denial of Rodriguez's motion.  Further, we grant Rodriguez's motion for partial summary judgment, holding as a matter of law that ConAgra discriminated against Rodriguez under the TCHRA; and we remand this case to the district court for a determination of the quantum of Rodriguez's damages.

REVERSED in part; RENDERED in part; and REMANDED.

---

[58] Gillen, 283 F.3d at 31 (citations omitted).

[59] Id.; see also Holiday, 206 F.3d at 645 (reversing summary judgment in favor of employer because "[c]ourts need not defer to an individual's doctor's opinion that is neither based on an individualized inquiry mandated by the ADA nor supported by objective scientific and medical evidence").