# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 18, 2009

Charles R. Fulbruge III
Clerk

No. 09-20231
Summary Calendar

ARCHIE WILLIAMS,

Plaintiff-Appellant,

v.

AT&T INC., FORMERLY SBC COMMUNICATIONS INC.,
SOUTHWESTERN BELL TELEPHONE, L.P., NOW KNOWN AS
SOUTHWESTERN BELL TELEPHONE COMPANY, MICHAEL D. TYSON,
and COMMUNICATION WORKERS OF AMERICA, AFL-CIO,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas;
USDC. No. 07-CV-559

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Archie Williams appeals the district court's grant of the
Defendant-Appellees' motion to dismiss and the Defendant-Appellees' motion for
summary judgment for claims resulting from what he alleges was an unlawful
termination of his employment. Finding no error in the district court's grant of

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

judgment in favor of the Defendant-Appellees' on all of the Plaintiff-Appellant's claims, we AFFIRM.

## I.    BACKGROUND

Williams began working for Southwestern Bell Telephone Company ("SWBT") as a communications technician[1] in August 1997. Williams's performance evaluations for 2002, 2003, and 2004 rated his job performance as "Meets Expectations." On October 21, 2005, Williams received a performance notice from his supervisor, Malcolm Clark, notifying him of deficiencies in his work performance, time reporting, and conduct. Williams's 2005 performance evaluation rated his job performance as "Below Expectations." On January 10, 2006, Clark placed Williams on Decision Making Leave ("DML") for failing to improve. Upon returning to work, Williams stated that he wished to continue working for SWBT. Clark told Williams that he needed to achieve and sustain required performance levels in all aspects of his job to remain employed. The discipline record reflects that Williams's "original Performance Notice in October 2005 was reduced to an employee discussion, and his Decision Making Leave [DML] was reduced to a Performance Notice in good faith along with additional training to provide Mr. Williams with multiple chances to improve and sustain an overall good measurement of work."

Williams's discipline record further reflects that between January 2006 and July 2006, Williams continued to have problems with his performance, conduct, and time-keeping. The record also includes a report indicating that he

---

[1] The essential functions of a communications technician include moving and lifting material weighing up to seventy-five pounds; climbing ladders and poles, working aloft or in manholes, and working for extended periods in such positions as kneeling, stooping, crouching, and crawling.

worked un-authorized overtime and charged several hours of "self-generated work" that was of no use to his employer. Michael D. Tyson became Williams's supervisor on May 16, 2006. On June 1, 2006, Tyson gave Williams a written notice of the deficiencies in his work, complete with examples of his poor performance and a warning that his employment would be terminated in the event that his performance did not improve.

After several other infractions, for which Williams repeatedly received notice, Williams was again placed on DML on June 27, 2006. At that time, Tyson met with Williams to discuss these issues. A union steward from Communication Workers of America ("CWA") was present at the meeting. During this meeting, Williams did not mention a leg injury affecting his ability to perform his job. Williams returned from this DML on June 29, 2006.

When he filed this lawsuit in the district court, Williams alleged that he sprained his left leg while on the job in 2006. The record is unclear, however, as to precisely when his leg injury occurred and when he reported it to SWBT since Williams himself has given numerous different dates at different times. In his amended complaint, Williams alleged that he hurt his leg on March 6, 2006, and reported it to his then-manager, Daniel Todd, on March 23, 2006. Yet in an interview with SWBT's workers' compensation claims adjuster, Williams stated that his injury occurred on June 20, 2006, at approximately 10:00 a.m. In his EEOC complaint, Williams asserted that he injured his leg on June 7, 2006. And when he testified before the Workers' Compensation Division, Williams stated that his left leg injury occurred in July 2006. In response to the Defendant-Appellants' discovery requests, Williams stated that the injury occurred on June 29, 2006. Yet in his amended complaint, Williams alleges that he first reported

his leg injury to Tyson, his immediate supervisor, on June 20, 2006. Thus, it is unclear, at best, when Williams suffered his left leg injury and when he reported this injury to his supervisor.

On July 5 and July 6, 2006, Williams again worked unauthorized overtime. As a result, on July 7, 2006, Tyson gave Williams a final warning that SWBT would no longer tolerate his poor performance, unauthorized overtime, and failure to complete tasks as a result of his repeatedly creating self-generated work. Williams alleges that it was on this date (July 7, 2006) that he requested an accommodation for his injury and Family Medical Leave Act ("FMLA") leave. Three days later, on July 10, 2006, Williams violated company policy, and as a result, an entire school district lost all of its telecommunication services for nearly twenty-four hours.

When Tyson learned what Williams had done, he suspended him for violating company policy and the terms of his June 27, 2006 DML. Following the July 27th suspension, SWBT's disability and workers' compensation carrier denied Williams's workers' compensation claim, stating as its reason for denial the fact that Williams had provided multiple dates "as the date of the injury with the same mechanism of injury. Claimant failed to timely report an injury within 30 days of the injury." The carrier also disputed that Williams suffered from a disability.

On August 7, 2006, SWBT terminated Williams's employment. SWBT asserts that Williams was fired for "his continued unsatisfactory job performance, poor attendance, the morale problems his misconduct caused in the work group[,] and outright insubordination in his failure to follow directions despite being told repeatedly that his job was in jeopardy." Williams

4

contends that he was fired as a result of his left leg injury/disability and because he filed a workers' compensation claim. He also asserts that any poor performance on his part is solely attributable to his left leg injury and SWBT's failure to provide him with reasonable accommodations–although he simultaneously acknowledges that his performance problems began in 2005, well before the ambiguous date of his left leg injury.

On July 17, 2006, CWA filed a grievance on Williams's behalf from the July 11 "Suspension and/or Termination . . . without just cause . . . ." As a result, the grievance went through the process outlined in the collective bargaining agreement. On January 5, 2007, SWBT denied the grievance. CWA declined to proceed with Williams's claim to arbitration.

On August 21, 2006, Williams filed a Charge of Discrimination with the EEOC, alleging disability discrimination. Williams did not, however, assert any claims of retaliation in his EEOC charge. On November 14, 2006, the EEOC issued a "Dismissal and Notice of Rights," explaining that, based on its investigation, the EEOC was "unable to conclude that the information obtained establishes violations of the statutes." Williams filed this lawsuit on February 9, 2007.

On July 20, 2007, the district granted the Defendant-Appellees' motion to dismiss and dismissed the Plaintiff-Appellant's retaliation claims under the FMLA, 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101 *et seq.*, for failure to exhaust administrative remedies.

On April 6, 2009, the district court granted the Defendant-Appellees' motion for summary judgment and entered judgment, with prejudice, on all of

the Plaintiff-Appellant's remaining claims, including his discrimination claims under the FMLA and the ADA. The district court also granted judgment in favor of the Defendant-Appellees on the Plaintiff-Appellant's claims that the Union breached its duty of fair representation and that SWBT breached the collective bargaining agreement.

The Plaintiff-Appellant timely filed the instant appeal. On appeal, the Plaintiff-Appellant raises thirteen points of error. We address each in turn.

## II.    STANDARD OF REVIEW

"We review a Rule 12(b)(6) dismissal *de novo*, accepting all well-pleaded facts as true and reviewed in the light most favorable to the plaintiff." *Sanders-Burns v. City of Plano*, 578 F.3d 279, 284 (5th Cir. 2009) (citations omitted). We review "a district court's grant of summary judgment *de novo*." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 455 (5th Cir. 2003) (citation omitted). "Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists." *Id.* (citing *Celotex v. Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986)).

Williams is proceeding pro se. We apply "less stringent standards to parties proceeding pro se than to parties represented by counsel and liberally construe the briefs of pro se litigants." *Grant v. Cuellari*, 59 F.3d 523, 524 (5th Cir. 1995).

## III.    ANALYSIS

### A.    ADA Discrimination Claim

Williams's first argument on appeal is that the district court erred when it required him to produce evidence substantiating his claim that he actually

suffered from a disability at the time his employment was terminated.[2] Williams contends that his failure to establish that he suffered from a disability should not preclude him from succeeding on his discrimination claim against SWBT. Williams is correct in this summation of the law–in that this Court has recognized that establishing an actual disability is not necessary to sustain an action under the ADA if the plaintiff can establish he was "regarded as disabled." *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 475 (5th Cir. 2006).[3]

In this case, however, summary judgment was awarded in favor of the Defendant-Appellees because Williams failed to establish that he was "regarded as disabled." In dismissing his ADA claim, the district court noted that Williams failed to produce evidence "that Tyson or anyone at SWBT perceived Williams as disabled." The district court correctly noted that in order to succeed on his claim under the ADA, Williams would have to produce evidence demonstrating that his employer "entertain[ed] some misperception regarding [Williams] – either that he has a substantially limiting impairment that he does not have or the impairment is not so limiting as believed." *Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001). Williams failed to do so.

Because Williams failed to put forth sufficient evidence demonstrating either that he suffered from a disability, *or* that he was perceived as disabled,

---

[2] In making this argument, Williams concedes that he did not produce sufficient evidence to demonstrate he suffered from a disability under the ADA.

[3] Under the ADA, a plaintiff is "regarded as" disabled if he:
(1) has an impairment which is not substantially limiting but which the employer perceives as ... substantially limiting ...; (2) has an impairment which is substantially limiting only because of the attitudes of others towards such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment.
*Rodriguez*, 436 F.3d at 476 (citation omitted).

the district court correctly awarded judgment in favor of the Defendant-Appellees.[4]

## B. ADA and FMLA Retaliation Claims

In his fourth and fifth issues raised on appeal, Williams argues that the district court erred in dismissing his retaliation claims under the ADA and the FMLA. Although he acknowledges that he did not assert any claims of retaliation in his EEOC charge, Williams contends that he need not exhaust his administrative remedies before bringing his retaliation claims in federal district court. Williams's characterization of the law, however, is mistaken.

A plaintiff must exhaust his administrative remedies prior to filing a retaliation claim, unless the "retaliation claim . . . arise[s] after the filing of the EEOC charge." *Gupta v. East Tex. State. Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). Williams claims he was retaliated against as a result of his filing a workers' compensation claim. Williams is not contending that he suffered retaliation as a result of filing his EEOC charge. Thus, because the alleged acts of retaliation occurred prior to his filing his EEOC charge, Williams' failure to assert his retaliation claims in the EEOC charge now precludes his ability to assert them in federal district court.

---

[4] Because it is clear from the record that the Plaintiff-Appellant did not successfully establish a *prima facie* case for a discrimination claim under the ADA, the Court will not address the Plaintiff-Appellant's second, third, eleventh, and thirteenth issues raised on appeal asserting, respectively: (1) that the district court erred in dismissing his ADA claim because his employer failed to make reasonable accommodations; (2) that the district court erred in requiring the Plaintiff-Appellant to establish he was disabled on his "ADA interference claim"; (3) that the district court erred in granting judgment in favor of the Defendant-Appellees with no proof that they attempted to engage in an "interactive process"; and (4) that the district court erred in granting judgment in favor of Tyson because Tyson's statements in the record constitute evidence of discrimination. Instead, we affirm the district court's judgment in favor of the Defendant-Appellees on the aforementioned grounds alone.

Consequently, we conclude that the district court properly dismissed his retaliation claims for failure to exhaust administrative remedies.

### C.    FMLA Claim

In granting summary judgment in favor of the Defendant-Appellees, the district court concluded that "Williams has not raised a fact issue as to whether he suffered from a serious health condition as defined by the FMLA."  In his sixth issue raised on appeal, Williams contends the district court's conclusion was in error since it is not necessary for him to establish a "serious health condition" in order to succeed on an FMLA claim.  Williams's argument is devoid of any merit.

In order to succeed on a claim for denial of leave under the FMLA, the plaintiff must present evidence to establish that he suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C.A. § 2612(a)(1)(D).  Williams' failure to put forth evidence demonstrating he suffers from a "serious health condition" fully supports the district court's conclusion that he "did not adduce sufficient evidence to preclude judgment as a matter of law under the FMLA." *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir. 1997).[5]

### D.    *Weingarten* Claim

In his seventh issue raised on appeal, Williams argues that the district court erred in granting judgment in favor of SWBT on his *Weingarten* claim.

---

[5] Because we affirm the district court's conclusion based on our finding that the Plaintiff-Appellant failed to put forth sufficient evidence demonstrating he suffered a "serious health condition," we do not reach the merits of the Plaintiff-Appellant's twelfth issue raised on appeal–arguing that the district court erred in granting the Defendant-Appellees' motion for summary judgment with no evidence that they attempted to engage in an "informal process."  Instead, we affirm the district court on the aforementioned grounds alone.

Williams claims his rights were violated when SWBT moved from the investigative interview immediately into a disciplinary interview.[6]

*Weingarten*, however, is not violated merely because an employer made a disciplinary decision before, during, or shortly after an employee interview. This Court has interpreted an employee's rights under *Weingarten* to mean "that an employee has the right to representation in any interview which he reasonably believes might result in disciplinary action except when the employer (1) has, before the interview, reached a decision to discipline the employee, (2) conducts the interview solely with the purpose of informing the employee of that decision, and (3) conducts that interview without going beyond that purpose." *Anchortank, Inc. v. NLRB*, 618 F.2d 1153, 1168, n.28 (5th Cir. 1980). Thus, an employee has no *Weingarten* right to union representation at a meeting "conducted solely to inform the employee of, and acting upon, a predetermined disciplinary decision." *Id*. at 1168. We conclude that the district court properly granted summary judgment in favor of SWBT on Williams' *Weingarten* claim.

E.     TWCA Retaliation Claim

Williams also argues, in his eighth issue raised on appeal, that the district court erred when it granted summary judgment in favor of SWBT and Tyson on his claims for retaliation under the Texas Workers' Compensation Act ("TWCA").[7] Because Williams failed to put forth sufficient evidence to establish

---

[6] In *Weingarten*, the Supreme Court held that the National Labor Relations Act "guarantees an employee's right to the presence of a union representative at an investigatory interview in which the risk of discipline reasonably inheres." *Nat'l Labor Relations Bd. v. J. Weingarten, Inc.*, 420 U.S. 251, 262 (1975).

[7] Section 451.001 of the Texas Labor Code prohibits an employer from discharging or discriminating against an employee because that employee has filed a workers' compensation claim in good faith. TEX. LAB. CODE ANN. § 451.001.

a *prima facie* case of retaliation, we affirm the district court's entry of judgment in favor of the Defendant-Appellees.[8]

The elements of a prima facie case of retaliation under the workers' compensation act are that: (1) the employee filed a claim for workers' compensation benefits in good faith; (2) he suffered an adverse employment action; and (3) there is a causal link between the adverse employment action and the filing of the workers' compensation claim. *Terry v. S. Floral Co.*, 927 S.W.2d 254, 257 (Tex. App.—Houston [1st Dist.] 1996, no writ). In the present case, the Plaintiff-Appellant failed to produce evidence to establish the necessary causal link between his application for workers' compensation benefits and his employer's decision to fire him.[9]

The fact that Tyson and SWBT were aware of Williams's workers' compensation claim at the time they terminated his employment is insufficient. *See Santillan v. Wal-Mart Stores, Inc.*, 203 S.W.3d 502, 507 (Tex. App.—El Paso 2006, pet. denied) ("[A]n employer's knowledge of a workers' compensation claim standing alone is insufficient to raise a genuine issue of material fact.") (quotation and citation omitted). Thus, we affirm the district court's conclusion

---

[8] On appeal, Williams asserts that the district court erred by failing to consider his evidence as a "modified version" of the Supreme Court's burden-shifting framework in *McDonnell Douglas v. Green*, 411 U.S. 792 (1978). Even if were to conclude that this argument contains merit, his failure to establish a *prima facie* case would still prove fatal to his claim. Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802.

[9] The record in this case alone stands as an insurmountable obstacle to Williams' attempt to establish any sort of casual link between his filing the workers' compensation claim and SWBT's termination of his employment. For almost two whole years prior to the termination of his employment (since 2005), Williams had been under constant notice that his performance was deficient and that his failure to improve would result in his termination.

that Williams failed to establish a *prima facie* case for retaliation under the TWCA.

### F. Labor Management Relations Act Claims

Williams's claims under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), for breach of the collective bargaining agreement and a violation of the duty of fair representation, comprise two distinct causes of action. One is against the employer, SWBT, and one is against the union, CWA. Section 301 provides an employee with a federal cause of action against his employer for breach of the collective bargaining agreement. Additionally, the cause of action against the union for breach of the duty of fair representation is implied under the National Labor Relations Act. *DelCostello v. Teamsters*, 462 U.S. 151, 103 (1983). Thus, the two causes of action are "inextricably interdependent" and together form a hybrid § 301 duty-of-fair-representation suit. *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61-62 (1981). We will address both causes of action in turn.

In his ninth issued raised on appeal, Williams asserts that the district court erred by entering judgment in favor of CWA, arguing that the evidence he presented to the district court demonstrated that the Union breached its duty of fair representation. He argues that CWA treated his case in a "perfunctory manner" because it did not raise the ADA, FMLA, and workers' compensation issues at the "Division and General levels of the grievance process." Williams alleges that CWA acted in bad faith by not including these issues in the initial grievance form or "anything that would alert the Company of the issues involved."

Williams's evidence, however, does not substantiate his claim because he has not shown that CWA's actions were "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."). Instead, a review of the record shows that CWA fulfilled its duty of fair representation. CWA initiated a grievance on Williams's behalf, investigated his grievance, and gave him an opportunity to demonstrate that SWBT lacked just cause to fire him. CWA reviewed all of the evidence before it and reasonably concluded that it would likely not prevail in arbitration because of Williams's extensive disciplinary record and performance problems. Williams failed to provide evidence that CWA's actions were in any way "arbitrary, discriminatory, or in bad faith," and as a result, we affirm the district court's entry of judgment in favor of CWA.

In his tenth issue raised on appeal, Williams contends that the district court erred when it concluded that SWBT did not breach the collective bargaining agreement. However, because the district correctly concluded that CWA did not breach its duty of fair representation, Williams failed to establish the "indispensable predicate" for his hybrid claim against SWBT. *United Parcel*, 451 U.S. at 62 ("the indispensable predicate for such an action is . . . a demonstration that the Union breached its duty of fair representation."); *see also Thomas v. LTV Corp.*, 39 F.3d 611, 621-622 (5th Cir. 1994) ("The indispensable predicate for a section 301 action against an employer, based on a violation of a collective-bargaining agreement, is the union's breach of its duty of fair representation.").

13

Consequently, we find the district court correctly concluded that SWBT did not breach the collective bargaining agreement, and we affirm the district court's grant of judgment in SWBT's favor.

IV.    CONCLUSION

For the aforementioned reasons, we affirm the district court's entry of judgment in favor of the Defendant-Appellees', with prejudice, on all of the Plaintifif-Appellant's claims.